**SERVICE TRUCKING CO., Inc., OF FEDERALSBURG, MD., v. UNITED STATES et al.**

**Civ. A. No. 2193.**

District Court, D. Maryland.

Sept. 30, 1944.

Harvey C. Bickel, of Baltimore, Md., and J. Earl Hummer, Charles V. Guthrie, and E. B. Ussery, all of Washington, D. C., for plaintiff.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., Robert L. Pierce, Sp. Asst. to Atty. Gen., and Nelson Thomas, of Washington, D. C., for defendant.

John R. Norris and James J. Doherty, both of Baltimore, Md., for intervenors.

Before SOPER, Circuit Judge, and COLEMAN and CHESNUT, District Judges.

SOPER, Circuit Judge.

This suit was brought to secure the organization of a three judge court to review an order of the Interstate Commerce Commission issued on January 27, 1943 which denied the application of Service Trucking Company, Inc., under the "grandfather" clause of the Interstate Commerce Act, 49 U.S.C.A. § 306(a),* for a certificate authorizing it to operate as a common carrier by motor vehicle in interstate or foreign commerce of commodities generally between all points on the Delmarva Peninsula and certain points in the States of Maryland, Virginia, Delaware, Pennsylvania, New Jersey, New York, Connecticut, Rhode Island, Massachusetts and the District · of Columbia. The application, designated No. M.C.-16357, was originally made by Service Trucking Company, Inc., of Hurlock, Maryland, predecessor in interest of the present complainant which was later substituted as applicant. The application was consolidated with two other "grandfather" applications in related cases not now before the court, to wit: No. M.C. 1824 by Preston Trucking Company and No. M.C. 46036 by Ernest L. Harner. The order of the Commission was based upon a report of an examiner submitted in the consolidated proceeding on January 29, 1942, after previous hearing at which both oral and documentary evidence was introduced. The examiner recommended that the application of Preston Trucking Company be granted and that the applications of Service Trucking Company and Harner be denied. The Commission approved these recommendations; and, referring to the two last-mentioned applications, said:

"No exceptions were filed to that part of the proposed report of the examiner which recommended that these applications be denied. The facts with respect to these proceedings are fully set forth in the proposed report and need not be repeated herein. We have examined the record and agree with the examiner that the applications should be denied. Further discussion thereof is unnecessary.

\* \* \* \* \*

"In Nos. MC46036 and MC16357 we find that applicants have' failed to establish that they were in bona fide operation on June 1, 1935, or July 1, 1935, as a common or contract carrier by motor vehicle, in interstate or foreign commerce, between any points whatsoever; and that the applications should be denied."

The examiner in his report recommended the denial of the application of the Service Trucking Company, complainant herein, on two grounds, viz.: (1) that the applicant had failed to establish that it was in bona fide operation as a common carrier on June 1, 1935; and (2) that it had failed to establish that it had continuously operated as such common carrier from June 1, 1935 to the date of its application because it had ceased to operate as such carrier between September, 1936 and October, 1937. The Commission stated no conclusion upon the second point but approved the examiner's findings of fact, and confined itself to the determination that the applicant had failed to establish that it was in bona fide operation as a common carrier by motor vehicle on June 1, 1935. Since we are in accord with this holding, we have no occasion to consider what action should be taken in respect to the second ground on which the examiner's recommendation was based.

The examiner's findings in regard to the activities of the applicant prior to June 1, 1935 and on that date were substantially as follows: Service is a successor in interest to J. Spence Phelps of Hurlock, Maryland, who operated three units of equipment. He started in business in 1929 and engaged primarily in the seasonal transportation of agricultural commodities moving in the main in July, August and September in each year. At other times he was without

---

* The pertinent provisions of the statute are as follows: " \* \* \* \* No common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, \* \* \* unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: Provided, however, That \* \* \* if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, or if engaged in furnishing seasonal service only, was in bona fide operation on June 1, 1935, during the season ordinarily covered by its operation and has so operated since that time, \* \* \* the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, \* \* \*."

any appreciable amount of traffic; but he did haul some other commodities, such as coal, one or two shipments of household goods and an occasional lot of freight for Preston Trucking Company on a trip basis. Desiring to keep his equipment busy at all times he entered orally into a long term arrangement with Preston Trucking Company in the latter part of 1934 under which they operated until July 1, 1935. He then withdrew his equipment from Preston's service and engaged in business as the Service Trucking Company with one O. R. Higgins, also of Hurlock, Maryland, who was a distributor of fresh fruit and vegetables and operated a coal yard and had been one of Phelps' principal shippers. On July 15 the business was incorporated and Phelps became the President of the corporation. On February 12, 1936 Phelps filed the "grandfather" application now under consideration on behalf of Service. In September, 1936 Phelps sold his interest in the corporation to Higgins and thereafter withdrew his equipment from Service and continued in business as the Phelps Trucking Company, Inc. Service's claim to "grandfather" rights is therefore made as successor in interest to Phelps and depends upon his activities on the crucial date.

On June 1, 1935, all Phelps' equipment was being operated by Preston. According to Phelps' testimony he was a 100 per cent trucker for Preston under the arrangement that Preston was to participate in the revenue from all traffic moved in Phelps' equipment, whether originated by Preston or Phelps. All of Phelps' equipment was painted with Preston's distinguishing color and name so as to advertise Preston's business. Phelps received 89 per cent of the gross revenue from traffic originated by Preston and Preston received 5% from the gross revenue originated by Phelps. From the standpoint of the general public Phelps' equipment was being operated in Preston's service; and to the extent that it was used in moving traffic originated by Preston it was operated under Preston's direction and control with responsibility to the general public as well as to the shippers. However, Phelps was doing a separate and distinct business in the traffic originated by himself for shippers he had served in the past and to whom he was responsible. This constituted but a small portion of the total traffic because Phelps had previously engaged primarily in the transportation of agricultural commodities of which very little

moved between January 1 and July 1, 1935. Phelps kept records of the traffic which he originated but he destroyed them all about the time that Service was incorporated. Consequently there is no showing as to what these operations were except an affidavit executed by Phelps on January 14, 1938 which sets out all the operations that he could recall at that time. It purports to show continuous operation and to include all traffic between 1929 and June 1, 1935. The end of the period covered by the affidavit is uncertain. Phelps first testified that the statement included operations ending 1936 and later that it included operations until January, 1938. It undoubtedly includes operations ending June 1, 1935. However, it not only failed to show the time, origin or destination of any movement, but the operations of others were so commingled as to defy separation. The confusion was due to the fact that Phelps erroneously considered himself to be the motor carrier in respect to traffic originated by others, such as Preston and Service, when it moved in his equipment, and also the motor carrier in respect to traffic which he originated but which moved in the equipment of others.

Under these circumstances, the examiner found it impossible to determine from the affidavit what Phelps' operations were during the "grandfather" period. The examiner, however, stated that he was "of the opinion that both Preston and Service were the motor carriers in respect of traffic which they originated and moved in Phelps' equipment until withdrawn from their service and that Phelps was continuously engaged in operation as a common carrier by motor vehicle in the seasonal transportation of argicultural commodities from Hurlock until such operations were taken over by Service, commencing with the 1935 season."

Phelps' claim that he was a motor carrier as to all traffic handled in his equipment and also as to all traffic originated by him, whether carried in his equipment or not, formed the basis of the principal contention of the Service before the examiner and the Commission. Service's position was that Preston was not engaged as a motor carrier during the critical period as to the shipments carried in Phelps' equipment, even though Preston originated them; but that as to these shipments, Phelps was the motor carrier and Service, as his successor, was entitled to the "grandfather"

1006

rights. This contention was overruled because the evidence clearly showed that Preston, and not Phelps, had control over and was responsible for these operations. This finding was in accord with the holdings of the court in United States v. N. E. Rosenblum Truck Lines, 315 U.S. 50, 62 S. Ct. 445, 86 L.Ed. 671, and Lubetich v. United States, 315 U.S. 57, 62 S.Ct. 449, 86 L. Ed. 677, and the correctness of the finding is not assailed by Service in the pending case.

■ Service now relies on the finding of fact of the examiner, approved by the Commission, that Phelps had a separate and distinct business of his own during the period from the end of 1934 to July 1, 1935, when his equipment was chiefly employed in transporting goods for Preston. This finding, as we have seen, was that from 1929 to 1934 Phelps was engaged in the seasonal transportation of agricultural commodities in July, August and September, and that at other times he was without an appreciable amount of traffic although he occasionally hauled other commodities. Since the Commission accepted the examiner's findings of facts, we are urged to hold that the Commission was wrong in reaching the ultimate conclusion that Service had failed to establish that it was in bona fide operation as a motor carrier on June 1, 1935. The defect in the argument is that it overlooks the additional finding of the examiner that it was impossible to determine what Phelps' operations were during the "grandfather" period because the evidence did not show the time, origin or destination of his traffic movements at that time but commingled his operations with those of others in such a way as to defy separation. This failure of proof was fatal to the application of Service because § 206(a) of the statute, 49 U.S.C.A. § 306 (a), provides that the applicant for "grandfather" rights must show that his predecessor was "in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made"; and § 208(a) of the Act, 49 U.S.C.A. § 308(a), requires the Commission in any certificate to specify the services to be rendered and the routes over which the motor carrier is authorized to operate. It has been frequently held that this requirement contemplates that the Commission shall preserve substantial parity between future and past operations and obviously the Commission cannot carry out this function

when the applicant fails to disclose the nature of the operations conducted on the "grandfather" date. See Alton R. Co. v. United States, 315 U.S. 15, 22, 62 S.Ct. 432, 86 L.Ed. 586; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 481, 62 S.Ct. 722, 86 L.Ed. 971; Crescent Express Lines v. United States, 320 U.S. 401, 409, 64 S.Ct. 167. The burden of proof is upon the applicant and in this case it has not been successfully borne. McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164; Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 83, 62 S. Ct. 932, 86 L.Ed. 1283.

■ It was suggested in the argument before us that even though the applicant failed to produce sufficient evidence to justify the issuance of a certificate under the "grandfather" clause, the Commission should be required to reopen the case and give the applicant an opportunity to produce further testimony. Subsequent to January 29, 1942, when the examiner filed his report, three motions for reconsideration of the case have been filed with the Commission, based on the contention that the examiner was in error in holding that Service failed to show sufficient continuity of operations between September, 1936 and October, 1937. In the last of these petitions it was requested that the matter be set for further hearing in order that Service might submit further testimony as to its operations on June 1, 1935, as well as to its operations before and after that date. Reference was made in the hearing in this court to the practice of the Commission, illustrated in such cases as Marvin R. Newton Common Carrier Application, 4 M.C. C. 227, 229 and H. P. Welch Co. Common Carrier Application, 30 M.C.C. 747, 755, of reopening a "grandfather" application that has been insufficiently proved, so that the applicant may produce evidence of its right to a certificate on the general grounds of public convenience and necessity. We think, however, that we would not be justified in sending this case back to the Commission for further consideration. Not only is such a matter one for the Commission to decide in the exercise of its own discretion, but there is no showing here that the applicant has any other evidence of its operations on June 1, 1935 to offer than that contained in the affidavit submitted at the hearing before the examiner and found to be inadequate.

The bill of complaint will be dismissed.