STATE OF MAINE
*vs.*
VIRGIL A. TORREY

York. Opinion July 11, 1952.

*Alexander A. LaFleur, Atty. Gen.*
*Raymond E. Jensen, Spec. Asst. Atty. Gen.*

*James J. Weinstein,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J. On report. The respondent was indicted for transporting freight and merchandise for hire by truck in interstate commerce without the permit of the Maine Public Utilities Commission required by statute. The case is before us for final determination upon undisputed facts. For our purposes we treat the record of the evidence as the equivalent of an agreed statement. We expressly do

not pass upon our authority or obligation to find the facts in a criminal case on report.

The decisive issue is: Was Mr. Curtis, owner of the truck driven by the respondent and leased to the Hemingway Brothers Interstate Trucking Company (sometimes called Hemingway), an interstate carrier?

The pertinent provisions of the statutes read:

"Sec. 22. *Interstate carriers; permit to operate.* In order that there may be proper supervision and control of the use of the highways of this state, every person, firm or corporation transporting freight or merchandise for hire by motor vehicle upon the public highways between points within and points without the state is required to obtain a permit for such operation from the commission. Application for such permits shall be made in the manner and form to be prescribed by the commission in its regulations, and such permits shall issue as a matter of right upon compliance with such regulations and payment of fees, unless the commission shall find that the condition of the highways to be used is such that the operation proposed would be unsafe, or the safety of other users thereof would be endangered thereby."

*R. S. Ch. 44, Sec. 22, as amended by P. L. 1949, Ch. 263.*

"Any driver of any motor vehicle which is being unlawfully used by any person, firm, or corporation in carrying on the business of a common carrier or of a contract carrier or of an interstate carrier without a certificate or permit shall be liable to the penalties provided in this section."

*R. S. Ch. 44, Sec. 30, Clause IV.*

A violation of either section is a misdemeanor.

Strictly the indictment charges that the respondent was an interstate carrier, and hence required a permit for himself. It is apparent, however, from the facts and the argu-

ment that the indictment was obtained to test the necessity of a permit, not in the name of the respondent, but in the name of Mr. Curtis for whom the respondent was driving the truck.

In reaching our decision we do not pass upon the validity of the statute requiring a state permit for an interstate carrier. For our purposes there must be compliance with the statute.

The facts may be briefly stated:

At the time of the alleged offense at Kittery the respondent was driving a truck owned by his employer, Mr. Curtis, and leased to Hemingway under a "motor vehicle rental lease agreement" for a stated sum of $90.00 for a trip from New York City to Portland. The freight and merchandise on the truck were being transported for hire in interstate commerce under bills of lading issued by Hemingway.

The following conditions and provisions in the printed form of the lease are of interest:

"3. The Lessor agrees that nothing in this lease shall give the Lessee jurisdiction or control over the vehicles other than to designate freight to be handled, to specify routes over which the carrier is permitted to operate by virtue of Interstate Commerce Commission authority, and to indicate destination of freight.

"7. The Lessor agrees that the sum herein agreed upon for the leasing of the equipment herein described, shall constitute full and complete payment of any and all expenses involved in the operation of said equipment.

"8. The Lessor agrees to furnish at his own expense, the driver or drivers required to operate the leased equipment during the term of the lease.

"14. The Lessor agrees that it will not use the Interstate Commerce Commission plates or any State Utility plates of the Lessee herein except when the Lessor is transporting freight for and solely on behalf of the Lessee."

Mr. Curtis owned two trucks which were used exclusively under trip leases with Hemingway and were marked with its name. The trucks were driven either by Mr. Curtis or by a driver employed by him.

The truck driven by the respondent carried a distinguishing number plate issued by the Maine Public Utilities Commission upon the request of Hemingway in which ownership by Mr. Curtis and lease to Hemingway were noted. A certificate of insurance covering both Mr. Curtis and Hemingway was also on file with the Commission. The records of the Commission did not disclose (1) that the owner-lessor furnished the driver, or (2) that the truck was leased not at all times, but only under trip leases.

The decision does not turn, however, upon the apparent acquiescence of the Commission in the lease of the truck. If Mr. Curtis was an interstate carrier, the Commission could not waive the statutory permit.

There are certain situations which we may well eliminate from discussion.

FIRST—The respondent was not engaged for *himself* in "transporting freight or merchandise for hire" by truck in interstate commerce. The driving of a truck in itself is not an interstate operation within the meaning of Section 22 of the statute. The truck driver is reached through Clause IV of Section 30. Unless the truck is lawfully used by a carrier—here of course an interstate carrier—with the proper certificate or permit, the driver violates the law. In a sense the driver must pay for the sins of his employer or in any

event of the carrier for whom the operation is conducted. Clause IV makes clear the distinction between the carrier and the truck driver. In brief, no one would seriously urge that the respondent for himself required a permit as an interstate carrier. The question is whether or not he was protected by Hemingway's permit.

SECOND—Hemingway was an interstate carrier. The operation in which the respondent acted in the capacity of a truck driver was part of its lawfully permitted business. The carrier was transporting freight and merchandise for hire not in its own truck or in a truck leased without a driver, but in a truck leased with driver furnished by the owner-lessor. In so far as the shipper was concerned he was shipping goods via Hemingway. Whether the truck was owner or leased by the carrier meant no more to the shipper via Hemingway than does the ownership of a freight car to the shipper via rail.

THIRD—There was no element of subterfuge or evasion in the lease arrangement between Mr. Curtis and Hemingway. In *U. S. v. Steffke,* 36 Fed. Supp. 257, for example, the defendant owner-lessor in fact continued an interstate operation for its own benefit in the name of the lessee. There is no suggestion here that Mr. Curtis used Hemingway to cover his own operations. His status as a carrier rested upon the open relationship with Hemingway. There was nothing hidden from the Commission or the shipping public. *Interstate Commerce Commission v. F & F Truck Leasing Corp.,* 78 Fed. Supp. 13.

The basic issue is not as urged by the state in its brief whether the respondent was the servant and agent of Hemingway or of Mr. Curtis, an independent trucker. The respondent clearly was in the employ of Mr. Curtis. The undoubted fact that Hemingway under the trip lease had certain control over the movement of the truck and thus over

its driver did not destroy the essential relationship between truck owner and truck driver.

In our view Mr. Curtis, the owner-lessor, was not in the business of transporting freight and merchandise for hire in interstate commerce. He was in the business of furnishing a truck with driver to a carrier for use in the interstate operations of the *carrier*. Accordingly, Mr. Curtis required no permit, and so the respondent needing no protection from a permit in the name of Mr. Curtis, is not guilty of the offense charged.

The situation in the case at bar is not unlike that described in the words of the Court in *Interstate Commerce Commission* v. *F & F Truck Leasing Corp., supra* at 19:

> "It is the frequent practice in the motor carrier industry for carriers to augment their over-the-road equipment by leasing vehicles from owner-operators who are also employed to drive the vehicles. Owner-operators who own or control several units of equipment are in fact engaged in the truck rental business. The traffic handled in such leased equipment by an owner-operator becomes an integral part and parcel of the authorized carrier's operations. The published rates of the lessee carrier control the transportation costs to the public, and as to the operations of such leased vehicle the lessee carrier assumes full responsibility for compliance with all applicable statutes and the rules of the Commission governing the duties of the carrier to the shipper and to the public generally (Dixie Ohio Express case, 17 M.C.C. 735, 752)."

The interstate operation we hold was the operation of Hemingway and not of Mr. Curtis.

The cases cited by the state may in our view be distinguished on the facts from the case at bar. In several of the cases the truck was leased not to a *carrier* to augment its

equipment but to the *shipper* of transported goods. Courts in such cases have repeatedly held the lessor is engaged in transportation for hire and must have a suitable permit. *Entremont, et al.* v. *Whitsell, et al.,* (Cal.) 89 Pac. 2d. 392; *Casale, Inc.* v. *United States,* 86 Fed. Supp. 167; *Public Service Commission* v. *Lloyd A. Fry Roofing Co.,* (Ark.) 244 S.W. 2d. 147; *Motor Haulage Co.* v. *United States,* 70 Fed. Supp. 17.

For like reasons a transportation tax was upheld on income from an operation in which the lessor delivered lessees' goods to their customers. *Bridge Auto Renting Corporation* v. *Pedrick,* 174 Fed 2d. 733.

The tort cases point to the liability of the lessee. In terms of the present case Hemingway could not delegate its responsibility to others. Those who carry goods for it, including the respondent, must be considered as a part of the Hemingway organization for the limited period of the lease. *Barry* v. *Keeler,* 322 Mass. 114, at 127, 76 N. E. 2d. 158; *Lowell, et al.* v. *Harris, et al.,* (Cal.) 74 Pac. 2d. 551; *Costello* v. *Smith, et al.,* 179 Fed. 2d. 715; *Law* v. *Holland Transportation Co., Inc.* (Mass.) 96 N. E. 2d. 286; *Restatement of the Law, Torts,* Sec. 428.

The "grandfather clause" cases are of interest. In *United States, et al.* v. *N. E. Rosenblum Truck Lines, Inc.,* 315 U. S. 50, 62 S. Ct. 445, owner-lessors serving a common carrier sought to acquire contract carrier "grandfather" rights. The Supreme Court said:

> "for the Congressional intent to avoid multiple 'grandfather' rights on the basis of a single transportation service is equally applicable to prevent appellees from being considered either as contract or as common carriers within the meaning of the Act."

See also *Thompson* v. *United States,* 321 U. S. 19, 64 S. Ct. 392.

Why we may ask, should not an interstate carrier augment its equipment when needed? And why should not a lessor supply the carrier's needs without becoming thereby a carrier in his own right? It does not accord with the common sense of the situation, in our view, to hold both Hemingway and Mr. Curtis to be interstate carriers.

Hemingway, and not Mr. Curtis, was an interstate carrier within our statute. The permit issued to Hemingway was sufficient protection for the respondent.

*Respondent not guilty;*

*Respondent discharged.*