**SHENANDOAH LIFE INSURANCE COMPANY, Inc., Plaintiff,**

v.

**Albert F. JORDAN, Superintendent of Insurance Department of Insurance of the District of Columbia, Defendant.**

**Civ. A. No. 1947–54.**

United States District Court, District of Columbia.

Nov. 10, 1954.

Hogan & Hartson, Washington, D. C., Richard S. Leftwich, Roanoke, Va., for plaintiff.

Vernon E. West, Corp. Counsel, Washington, D. C., Milton D. Korman, Asst. Corp. Counsel, Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

Defendant, the District of Columbia Superintendent of Insurance, on April 30, 1954, refused to renew plaintiff's certificate of authority and the licenses of its agents in the District. This refusal was based on an opinion of the Corporation Counsel that policies issued by plaintiff might not be in accordance with 35 D. C. Code, § 710(5) (1951 Edition [1]). Defendant offered plaintiff a hearing for the purpose of showing that it was complying with the law or making arrangements to do so in the future. Plaintiff did not accept the hearing offer but instituted the subject action which requested that defendant be ordered to issue a certificate of authority to it and to issue licenses to its agents.

In the present posture of the case there are three motions pending before the Court. These motions are:

(1) Plaintiff's motion for a preliminary injunction.

(2) Plaintiff's motion for summary judgment.

(3) Defendant's motion for summary judgment.

The defendant in an effort to determine whether the group policies issued by plaintiff to associations of government employees complied with the statute requested an opinion from the Corporation Counsel on the following question:

"Whether a group insurance policy issued to an association of Federal employees and which does not insure 75% of the employees of any Federal Department is, nevertheless, in compliance with the section cited if it insures not less than 75% of the members of the association and not less than 50 persons."

The conclusion reached by the Corporation Counsel was:

"* * * as said information relates to associations existing for a principal purpose of insurance and under consideration in this opinion, the question posed by the Superintendent must be answered in the negative."

The question before the Court is the intent of Congress in enacting this legislation. It is a well-recognized principle of statutory construction that the terms of a statute should be so construed so as to effectuate the true intent and object of the legislature in the enactment. Minor v. Mechanics' Bank, 1 Pet. 46, 64, 7 L.Ed. 47; United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. N. E. Rosenblum Truck Lines Inc., 315 U.S. 50, 53, 62 S.Ct. 445, 86 L. Ed. 671.

In the American Trucking Associations case, supra, the Court in discussing this point, said at pages 542–544 of 310 U.S., at page 1063 of 60 S.Ct.:

"In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the in-

---

1. "No policy of group life insurance shall be delivered in the District unless it conforms to one of the following descriptions: * * *

"(5) A policy issued to the president of the Board of Commissioners, or to the head of any Federal department or independent Federal bureau, board, commission, or other Federal independent establishment, or to an association of Federal employees, as the case may be, covering not less than fifty employees of the government of the District or of the Federal Government, with or without medical examination, the premium on which is to be paid by the employees and insuring only employees, or any class or classes thereof determined by conditions pertaining to the employment, for amounts of insurance based upon some plan which will preclude individual selection, for the benefit of persons other than the employer; Provided, That when the benefits of the policy are offered to all eligible employees, not less than 75 per centum of such employees may be so insured."

tent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, * * *. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' ".

The Act itself contains no definition of the term "association of Federal employees". The designation stands alone in the Act without qualification. Thus it appears clear and unambiguous. The word "association" would not seem, in itself, to call for explanation, nor would the term "of Federal employees". When joined the combination of words likewise seems to explain itself. Defendant takes the position that the legislative history of the passage of the bill which resulted in the Act under scrutiny in connection with the instant motion supports his contention that it was the intention of Congress that the word "association" as used in the Act should be construed, in effect, to be "an association other than an association organized in order that it's members may obtain insurance."

The bill of which this section was a part, H.R. 9178, 73rd Congress was entitled "A bill to regulate the business of life insurance in the District of Columbia." The legislative history of the bill contains the following colloquy which occurred in the House of Representatives during the consideration of the legislation as shown on 78 Cong.Record, part 10, page 11,104.

"Mr. Woodrum. Mr. Chairman, I offer an amendment, which I send to the desk.

"The Clerk read as follows:

"Amendment offered by Mr. Woodrum: On page 102, line 9, after the last syllable and the word 'establishment', insert 'and to an association of Federal employees.'

"On line 10, after the word 'only' strike out the word 'all.'

"On line 11, strike out the first words 'all of.'

"Mr. Woodrum. I may say Mr. Chairman, that I have discussed this amendment with the gentleman from Ohio and it is satisfactory to him.

"Mr. Blanchard. Is it the purpose of this amendment to put the Association of Federal Employees under regulation?

"Mr. Harlan. No; that is not the idea. This is in the section of the bill pertaining to group insurance. When the group-insurance provision was taken up, it only carried such groups as are taken care of in other sections of the country. Here in the District we have a number of organizations of Federal employees. Personally I think the section is broad enough to cover them, but this just extends the privilege of group insurance to these Federal employees' unions; that is all.

"The Chairman. The question is on the amendment offered by the gentleman from Virginia.

"The amendment was agreed to."

It is established by the record by means of affidavits that the amendment discussed here was offered by Representative Woodrum, in whose District plaintiff's offices were located, at the instance of the plaintiff. The alleged purpose of this amendment was to protect the business which plaintiff was doing with associations of government employees in the District, the very business challenged by this action.

The defendant argues that the use of the word "Unions" by Representative Harlan in the colloquy, supra, indicates that Congress intended that only unions, or such other associations of government employees as were not formed for the specific purpose of obtaining group in-

surance, were to come within the meaning of the term used.

■ The Court, considering all the surrounding facts and circumstances, does not feel justified in attaching to the word "unions" the meaning which defendant seeks to attach to it. The word "unions" was used only once at the end of a colloquy on the floor of the House.

Taking into account the circumstances under which the amendment was drawn and introduced, it's context, both as to other provisions in 35 D.C.Code 710 (1951 Edition) and as to the discussion of the amendment in the House of Representatives, the Court is unable to conclude that such use of the word "unions" reflects the legislative intent claimed by defendant.

After the life insurance bill was passed as Public Law 436, 73rd Congress the Secretary-Treasurer of the Municipal Employees Group Insurance Association, one of the groups insured by plaintiff received a letter from J. A. Marshall, then Superintendent of Insurance for the District of Columbia. This letter, a photostat of which is contained among plaintiff's exhibits, reads as follows:

"Dear Mr. Gelbman:—

"Answering your inquiry of June 15th, please be advised this office interprets that portion of Public No. 436—73rd Congress—H.R. 9178, which refers to group insurance as follows:

"Any association of Federal employees is eligible to contract for group insurance provided 75% of its members make application for coverage.

"I am extremely sorry there was so much delay in answering this inquiry, but it was due to the fact I was disinclined to make a ruling on this law until such a time as I had been officially notified of its approval.

"I shall be very happy to address your conference and thank you for the invitation."

Plaintiff also included among its exhibits a letter dated May 9, 1949, from defendant to the Comptroller of plaintiff. The bill referred to in this letter was a proposed amendment to the Life Insurance Law of the District and was eventually enacted as the Act of July 12, 1950, 64 Stat. 330. In this amendment Section 710(5) of Title 35 D.C.Code remained in substantially the same form as that in which it was enacted by the 73rd Congress. The pertinent part of the letter reads as follows:

"I am enclosing a copy of H.R. 4394, which should be of interest to your company in view of the fact that it preserves the right to insure associations of Government employees under a group policy. You will find that provision on pages 9 and 10 of the bill. As you know, our group section in the present law is very badly in need of overhauling and we think this bill will go as far as is necessary without disrupting the present situation. Except for the section in which you are particularly interested, it is, as you will note, the standard bill as approved by the National Association last December. Let me know what your associates think about it and whether it will have your active support."

In view of the legislative history of the Act and the informal opinions of two insurance Superintendents for the District of Columbia, the Court is of the opinion that the proviso requiring coverage of "not less than 75 per centum of such employees" does not mean that 75 per centum of all the employees of a department, board, commission, etc., must be included before the group may be validly insured.

No word or words appear in the Act which define or qualify or limit the meaning of the words "association of Federal employees". In the Court's opinion neither the legislative history of the Act or it's context justify the Court in concluding that the word "association" as used in the Act, is to be construed to mean "association, other than an associ-

ation organized in order that it's members may obtain insurance". It appears to the Court that it was the intention of Congress, in enacting 35 D.C.Code 710 (5), supra, that an association of not less than 50 employees could be formed, and could obtain insurance under this section although the group did not comprise 75 per centum of all the employees of a department, board, commission, etc., and even if the sole purpose for the formation of the association was the obtaining of group insurance.

■ It further appears to the Court that the law repeatedly has been administratively construed consonantly with such intention of Congress. While the informal opinions of the Superintendents of Insurance are not conclusive the Court does not feel justified in disregarding them as administrative interpretations despite their informality, especially since the interpretation has been followed in practice for so long a period of time.

The motion of plaintiff for summary judgment is hereby granted.