**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Taylor QUEEN, also known as Jerry Arnold, Defendant-Appellant.**

**No. 649-70.**

United States Court of Appeals,
Tenth Circuit.

July 23, 1971.

Jeff R. Laird, First Asst. U. S. Atty. (William R. Burkett, U. S. Atty., on the brief), for plaintiff-appellee.

Jay R. Bond, Oklahoma City, Okl., for defendant-appellant.

Before BREITENSTEIN, ALDISERT,* and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

We have here a unique question arising under 18 U.S.C. § 660 and relating to the misapplication of property used in commerce. The district court denied a motion to dismiss the indictment. See United States v. Queen, W.D.Okl., 313 F.Supp. 896. The jury found the defendant-appellant Queen guilty and he appeals from the judgment of sentence. The basic issue is whether defendant was an employee of a common carrier and, hence, within the prohibitions of § 660.

John F. Ivory Storage Co., Inc., is a common carrier engaged in long distance hauling of household goods and operates in 47 states under a certificate issued by the Interstate Commerce Commission. Glynn Crook, a truck owner-driver, had an exclusive contract with Ivory. Thereunder, Crook operated his motor tractor to pull a trailer, furnished by Ivory, and devoted the motor tractor to the services of Ivory in the transportation of goods in accordance with shipping contracts entered into by Ivory. Crook hired and controlled any labor needed for loading and unloading. He also performed certain packing, crating, and other services required by Ivory. Crook took care of the insurance on his equipment and Ivory carried insurance on the cargo. All truck operating and maintenance costs, including property and vehicle taxes, were borne by Crook. Motor carrier permits, certificates and franchises were the responsibility of Ivory. The contract required Crook to paint the tractor in accordance with Ivory designations. In the event the truck was withdrawn from Ivory service, he agreed to immediately remove all Ivory insignia and permit or certificate numbers. All transportation contracts were between Ivory and the shipper or consignor. All funds collected by Crook were the property of Ivory. Crook received compensation from Ivory in accordance with a specified rate schedule. Ivory did the paper work incidental to the handling and transportation of the cargo.

Crook, while operating under the Ivory contract, was in Denver, Colorado, with his truck loaded with interstate shipments. He hired defendant Queen to go with him to assist in the unloading and loading of cargo. They went to Oklahoma City, Oklahoma, and were to proceed from there to a point in Kansas to load some cargo. Crook directed defendant to take the truck to a truck stop and keep it there while he, Crook, spent some time at home. Defendant drove the truck to the truck stop and became involved in a drinking bout. Several hours later he left the truck stop in the truck and, after driving erratically, put it in a ditch some 20–25 miles south of Oklahoma City.

* Of the Third Circuit, sitting by designation.

The indictment charged that the defendant

"* * * being an employee of Glenn Crook, who is engaged in interstate commerce as a common carrier and riding in or upon a motor truck of such carrier moving in interstate commerce, embezzled and wilfully misapplied property of such employer * * * [the truck and the trailer], used in interstate commerce, and wilfully converted same to his own use, in violation of Title 18, United States Code, Section 660."

At trial, the defendant did not deny the employment by Crook. He testified that he was highjacked at the truck stop. The jury disbelieved his story. His counsel urged in the trial court, and urges here, that § 660 does not apply because the employer was not a common carrier engaged in interstate commerce.

So far as pertinent § 660 provides:

"Whoever, being a president, director, officer, or manager of any firm, association, or corporation engaged in commerce as a common carrier, or whoever, being an employee of such common carrier riding in or upon any * * * motortruck * * * of such carrier moving in interestate commerce, embezzles, * * * or willfully misapplies * * * any of the * * * property, or assets of such firm, association, or corporation * * * used in, such commerce, in whole or in part, or willfully or knowingly converts the same to his own use * * *."

shall be subject to fine and imprisonment.

Ivory is a common carrier. At the time the defendant absconded with the truck, it was loaded with interstate shipments. The question is whether Crook, the employer of the defendant, was "engaged in commerce as a common carrier."

The fact that Crook was an individual proprietor is without importance because in United States v. Cook, 384 U.S. 257, 86 S.Ct. 1412, 16 L.Ed.2d 516, the Court held that § 660 applies to employees of individual proprietorships operating as a common carrier. Crook was a contract carrier for Ivory which held the certificates and permits authorizing interstate transportation of goods. In Schmokey v. United States, 10 Cir., 182 F.2d 937, we considered a prosecution under § 660 and held that a strict construction of the statute did not permit the conviction of an employee of a contract carrier for Greyvan Lines, Inc. Doubt is cast on the validity of that decision by United States v. Cook, supra. There, the Schmokey decision is characterized as supporting the proposition that § 660 applies only to employees of a "firm, association, or corporation." In Cook, the defendant was the employee of an individual proprietorship engaged in commerce as a common carrier. The Court recognized the strict construction rule and said, 384 U.S. at 260, 86 S.Ct. at 1414:

"To us the congressional intent to reach the employees of any carrier, whatever the form of business organization, seems reasonably clear."

Cook did not consider a situation where the defendant is the employee of a contract carrier operating under the certificate of a common carrier. However, we must re-evaluate Schmokey in the light of Cook.

Defendant insists that the issue is controlled by Interstate Commerce Act definitions, see 49 U.S.C. §§ 1(3) (a), 303(a), and 902. A short answer is that such definitions are limited in application to "this chapter," i. e., the Interstate Commerce Act and its amendments. We find no pertinence in decisions such as United States v. N. E. Rosenblum Truck Lines, Inc., 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671 and Thomson v. United States, 321 U.S. 19, 64 S.Ct. 392, 88 L.Ed. 513, which construe and apply the Interstate Commerce Act.

■ Section 660 does not define the term "common carrier." The trial court noted, 313 F.Supp. at 897, that the only definition of "carrier" in Title 18 is

found in § 831 which relates to explosives and other dangerous articles and which has no application here. We agree with the trial court that, by failing to define "common carrier" in § 660, Congress intended that "it should be a term defined by the common law rather than by other statutes of specialized application, not criminal in nature." Ibid.

Defendant argues that Crook was not within the common law definition because to satisfy its requirements one must hold himself out generally to the public as ready to carry the goods offered. See, e. g., Goodman v. New York, N. H. & H. R. Co., 295 Mass. 330, 3 N.E.2d 777, 778. The record shows that 33% of the Ivory business is handled by contract carriers such as Crook. Ivory was a common carrier. It solicited business from the public and turned the transportation of some shipments over to Crook under his contract. Crook was ready to carry, and did carry, the goods of the general public in his truck under the Ivory I.C.C. certificate with its number painted on the truck for the world to see.

In United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613, the Court considered the application of the Hours of Service Act, 34 Stat. 1415, to a company which claimed that it was not a common carrier and "merely transports as agent such freight as is delivered to it." Ibid at 303–304, 39 S.Ct. at 285. The court said that "a common carrier does not cease to be such merely because the services which it renders to the public are performed as agent for another." Ibid at 306–307, 39 S.Ct. at 286. The principle applies here. Crook transported goods for the general public as the contract agent of Ivory.

The development of transportation has brought about complex business organizations and contractual methods for serving the general public. The holding in Cook that the congressional intent in the enactment of § 660 was to reach "the employees of any carrier, whatever the form of business organization," 384

U.S. at 260, 86 S.Ct. at 1414, erodes, if not destroys, our decision in Schmokey. The defendant cannot avoid the application of § 660 by reliance on the type of arrangements made by Ivory and Crook for the interstate transportation of goods for the general public. In our opinion the district court correctly held, and instructed the jury, that Crook was a common carrier.

Little need be said about the defendant's attacks on the instructions. There was no compliance with Rule 30, F.R. Crim.P. See Burns v. United States, 10 Cir., 286 F.2d 152, 157, and Hayes v. United States, 10 Cir., 238 F.2d 318, 321, cert. denied 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142. We have examined the instructions and find no error adversely affecting the substantial rights of the defendant.

Affirmed.