A. S. ALEXANDER, JR., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent; J. A. HOLLEY TRUST U-2, CHARLESTON NATIONAL BANK, TRUSTEE, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alexander v. Commissioner
Docket Nos. 20513-86, 28934-87
United States Tax Court
T.C. Memo 1991-105; 1991 Tax Ct. Memo LEXIS 145; 61 T.C.M. (CCH) 2119; T.C.M. (RIA) 91105; March 7, 1991, Filed *145 Decisions will be entered for the respondent. James M. Sturgeon, Jr., for the petitioners. Steven J. Bernosky, for the respondent. RAUM, Judge. RAUM
MEMORANDUM OPINION The Commissioner determined deficiencies in the windfall profit taxes of A. S. Alexander, Jr., and the J. A. Holley Trust U-2 for the taxable year 1980 in the following amounts: Petitioner
Deficiency
A. S. Alexander, Jr.
$ 1026.73
J. A. Holley Trust U-2
705.11
At the time the petitions in this case were filed, Alexander resided in Charleston, West Virginia, and Charleston National Bank, trustee of the trust, had its principal office in that city. The case was submitted on the basis of a stipulation of facts pursuant to our Rule 122. During the taxable year 1980, each petitioner held mineral rights and interests in oil producing properties in West Virginia. Petitioners sold the oil from their respective properties to the Pennzoil Company, which withheld from the proceeds the windfall profit tax applicable to such sales. Sec. 4995(a)(1). [1] The windfall profit tax (WPT) was a Federal excise tax on the "windfall profit" from taxable crude oil and was imposed by section 4986(a). [2] Pertinent *146 portions of the WPT are set forth in the margin. [3] The sole issue for decision is whether certain West Virginia taxes paid by petitioners qualify for the "severance tax adjustment" defined in section 4996(c), and thus reduce the amount of "windfall profit" subject to the windfall profit tax. *147 For present purposes, "windfall profit" may be defined as the difference between the price for which oil was sold and the price for which it would have been sold if crude oil prices had not been deregulated and if the OPEC cartel had not driven up the price of oil. See sections 4988-4989; S. Rept. 96-394 (1979), 1980-3 C.B. 131, 142; H. Rept. 96-304 (1979), 1980-3 C.B. 85, 88, 91. In substance, the severance tax adjustment operates as a deduction, reducing the amount of windfall profit subject to the WPT. See section 4988(a). Indeed, the Conference Report repeatedly refers to the severance tax adjustment as a "deduction." H. Rept. 96-817 (1980), 1980-3 C.B. 245, 264-265; See also S. Rept. 96-394 (1979), 1980-3 C.B. 131, 173; H. Rept. 96-304 (1979), 1980-3 C.B. 85, 117. Disregarding certain limitations not relevant here, the severance tax adjustment consists of the state severance taxes attributable to the windfall profit portion of the sale proceeds. See section 4996(c)(1) and (3). In order for a tax to qualify as a "severance tax," it must be "imposed by a State with respect to the extraction *148 of oil, and determined on the basis of the gross value of the extracted oil." Sec. 4996(c)(2); see also section 51.4996-2, Excise Tax Regs. Petitioners were subject to the West Virginia income tax (article 21 of chapter 11, W.Va. Code (1987)) and the West Virginia business and occupation taxes (B & O taxes) (article 13 of chapter 11, W.Va. Code (1987)). Petitioners claim that the B & O taxes they paid qualify for the severance tax adjustment described in section 4996(c). The B & O taxes here involved have been referred to by the parties as "severance" taxes [4] and we accept that characterization to the extent that it is relevant in the computation of the Federal windfall profit tax. *149 Furthermore, there is no question that petitioners in fact "paid" the West Virginia severance taxes, at least in form. However, section 11-21-8a of the West Virginia Code allowed these B & O taxes to serve as a credit against petitioners' state income tax liability. [5] Although the use of the B & O taxes as a credit against the state income tax is subject to certain limitations, we must assume that petitioners did in fact use their severance taxes to discharge their respective income tax liabilities pro tanto, since they have not satisfied their burden of showing otherwise. The fact that these B & O taxes served to eliminate an equal amount of state *150 income tax suggests that although the B & O taxes were in form "imposed * * * and determined on the basis of the gross value of the extracted oil" as required by section 4996(c)(2), they were actually imposed on some other basis, or not imposed at all. The precise question before us, then, is whether these West Virginia severance taxes that were used to reduce state income tax liability may be taken into account as a "severance tax adjustment" to reduce the amount of windfall profit subject to the tax imposed by section 4986(a). On the record before us, we hold that these West Virginia severance taxes do not qualify for the "severance tax adjustment." It would seem, upon a superficial examination of the problem, that petitioners should prevail, because the West Virginia taxes were indeed imposed by that state "with respect to the extraction of oil, and determined on the basis of the gross value of the extracted oil" in accordance with the literal language of section 4996(c)(2). But it has often been stated, in one form of words or another, that what may appear to be unambiguous upon a literal reading of a statute must yield to a different result that is called for by the intention *151 of Congress as disclosed in the legislative history. As we pointed out in Carasso v. Commissioner, 34 T.C. 1139, 1142 (1960), affd. 292 F.2d 367 (2d Cir. 1961), cert. denied 369 U.S. 874, 8 L. Ed. 2d 277, 82 S. Ct. 1144 (1962): Although there may have been support at one time for such a rigid limitation upon the interpretation of statutes (cf. Caminetti v. United States, 242 U.S. 470, 61 L. Ed. 442, 37 S. Ct. 192), it is now established beyond successful challenge that a court may seek out any reliable evidence as to legislative purpose regardless of whether the statutory language appears to be clear. United States v. Amer. Trucking Ass'ns., 310 U.S. 534, 543-544, 84 L. Ed. 1345, 60 S. Ct. 1059; United States v. Dickerson, 310 U.S. 554, 562, 84 L. Ed. 1356, 60 S. Ct. 1034; United States v. Rosenblum Truck Lines, 315 U.S. 50, 55, 86 L. Ed. 671, 62 S. Ct. 445; Harrison v. Northern Trust Co., 317 U.S. 476, 479, 87 L. Ed. 407, 63 S. Ct. 361; Cabell v. Markham, 148 F.2d 737, 739 (C.A. 2), affirmed 326 U.S. 404, 409, 90 L. Ed. 165, 66 S. Ct. 193; C. & S. Air Lines v. Waterman Corp., 333 U.S. 103, 106, 92 L. Ed. 568, 68 S. Ct. 431; Schwegmann Bros. v. Calvert Corp., 341 U.S. 384, 390-395, 399, 95 L. Ed. 1035, 71 S. Ct. 745. Cf. *152 also Ozawa v. United States, 260 U.S. 178, 194, 67 L. Ed. 199, 43 S. Ct. 65; Church of the Holy Trinity v. United States, 143 U.S. 457, 472, 36 L. Ed. 226, 12 S. Ct. 511. As the Supreme Court said in the American Trucking case (310 U.S. 534 at 543-544, 60 S. Ct. 1059, 84 L. Ed. 1345): When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." * * * [Emphasis supplied.]
The intention of Congress appears here in the reports of both the Senate Finance Committee and the House Ways and Means Committee. The Senate Finance Committee stated that: The severance tax adjustment is necessary to avoid placing an undue burden on the producer of oil when the combined effect of the windfall profit tax, the severance tax, and State and Federal income taxes is taken into account. [Emphasis supplied.]
S. Rept. 96-394 (1979), 1980-3 C.B. 131, 173; See also H. Rept. 96-304, (1979), 1980-3 C.B. 85, 117. Plainly, the state severance tax deduction (embodied in the "severance tax adjustment") was intended to mitigate *153 the burden produced by the Federal windfall profit tax in combination with the other applicable State and Federal taxes. It is thus of critical significance here that the B & O taxes were credited in full against the taxpayer's West Virginia income tax. To the extent that the state severance tax is used to discharge one's income tax liability, the taxpayer in effect has not "paid" any state severance tax, notwithstanding that he has done so in form. The legislative history persuasively indicates that Congress intended the deduction for state severance taxes to prevent the imposition of an excessive tax burden (state and Federal). And in that connection the state severance tax should not be considered in isolation from the taxpayer's liability for other applicable state taxes, particularly the income tax. Clearly, the severance tax results in no additional tax burden if it is not really paid, but instead used to diminish state income tax liability. The Congressional concern underlying the severance tax adjustment is therefore absent in the circumstances of this case. Thus, the statute must be construed so as to disallow the deduction, notwithstanding that a strictly literal reading *154 may point in the opposite direction. The result that we thus reach is reinforced by the well recognized rule that deductions and exemptions are to be strictly or narrowly construed. See Estate of Bowers v. Commissioner, 94 T.C. 582, 590 n. 2 (1990), where we set forth a number of cases, selected at random, recognizing or giving effect to that familiar and long standing rule in a wide variety of situations. One final matter. The Government has relied heavily upon Rev. Rul. 82-91, 1982-1 C.B. 193, which appears to take the position that the West Virginia B & O taxes cannot under any circumstances constitute severance taxes for the purpose of the severance tax adjustment. We do not go that far. We hold here merely that the severance tax deduction is unavailable only to the extent that the West Virginia B & O taxes are applicable as a credit against the taxpayer's income tax liability. We do not pass upon the soundness of the Revenue Ruling to the extent that it goes beyond this point. Decisions will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references hereinafter are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year at issue.↩
2. The Crude Oil Windfall Profit Tax Act of 1980 was enacted as sec. 101(a)(1) of Pub. L. 96-223, 94 Stat. 231, and was effective for periods after February 29, 1980. It was repealed by sec. 1941(a) of the Omnibus Trade and Competitiveness Act, Pub. L. 100-418, 102 Stat. 1322, effective for crude oil removed from the premises on or after August 23, 1988.↩
3. SEC. 4986(a) Imposition of Tax. -- An excise tax is hereby imposed on the windfall profit from taxable crude oil removed from the premises during each taxable period. SEC. 4988(a) General Rule. -- For purposes of this chapter, the term "windfall profit" means the excess of the removal price of the barrel of crude oil over the sum of -- (1) the adjusted base price of such barrel, and (2) the amount of the severance tax adjustment with respect to such barrel provided by section 4996(c). [Emphasis added.] SEC. 4996(c) Severance Tax Adjustment. -- For purposes of this chapter -- (1) In general. -- The severance tax adjustment with respect to any barrel of crude oil shall be the amount by which -- (A) any severance tax imposed with respect to such barrel, exceeds (B) the severance tax which would have been imposed if the barrel had been valued at its adjusted base price. (2) Severance tax defined. -- For purposes of this subsection, the term "severance tax" means a tax -- (A) imposed by a State with respect to the extraction of oil, and (B) determined on the basis of the gross value of the extracted oil. (3) Limitations. -- (A) 15 percent limitation. -- A severance tax shall not be taken into account to the extent that the rate thereof exceeds 15 percent. (B) Increases after March 31, 1979, must apply equally. -- The amount of the severance tax taken into account under paragraph (1) shall not exceed the amount which would have been imposed under a State severance tax in effect on March 31, 1979, unless such excess is attributable to an increase in the rate of the severance tax (or to the imposition of a severance tax) which applies equally to all portions of the gross value of each barrel of oil subject to such tax.↩
4. One section of article 13 (sec. 11-13-2a) imposes a 4.34 percent tax on the gross value of the oil extracted and sold, and another section (sec. 11-13-2i) imposes a tax of 1.15 percent of the gross income ("in the form of rentals, royalties, fees or otherwise") derived from "furnishing any real or tangible personal property, or any interest therein for hire, loan, lease, or otherwise." It is not clear whether both of these sections are involved herein, in view of the stipulation of the parties that petitioners were subject to and paid the West Virginia B & O taxes for oil produced "pursuant to W.Va. Code sec. 11-13-1 et seq." However, since petitioners repeatedly refer to the B & O taxes involved as "severance" taxes imposed by "W.Va. Code sec. 11-13-1 et seq.," and since the Government has not objected to that characterization of those West Virginia taxes, we will also treat such West Virginia taxes involved herein as "severance" taxes for all purposes in this case, without further inquiry as to whether they were the taxes imposed by sec. 11-13-2a andsec. 11-13-2i of the West Virginia Code↩ (1987).
5. SEC. 11-21-8. Credits against tax. (a) Business and occupation tax credit. -- A credit shall be allowed against the [income] tax imposed by section three [sec. 11-21-3] of this article equal to the amount of the liability of the taxpayer for the taxable year for any tax imposed under article thirteen [sec. 11-13-1 et seq.↩], chapter eleven of this Code: * * *