**Maria EISENHAUER, on her own behalf and on behalf of her children, Francis X. Eisenhauer and Brian F. Eisenhauer, Appellant,**

v.

**David MATHEWS, Individually and in his capacity as Secretary of the Department of Health, Education and Welfare, Appellee.**

No. 323, Docket 75–6047.

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1975.

Decided April 15, 1976.

682

Jonathan A. Weiss, New York City (Legal Services for the Elderly Poor, Philip M. Gassel, New York City, on the brief), for appellant.

J. Christopher Jensen, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before HAYS, TIMBERS and GURFEIN, Circuit Judges.

HAYS, Circuit Judge:

This appeal raises issues concerning the construction of the Social Security Act, 42 U.S.C. § 301 et seq., [the Act]. One issue involves a narrow question of statutory interpretation: whether the provisions of section 216(e) of the Act, 42 U.S.C. § 416(e), under which a child "shall be deemed the stepchild" of an individual who goes through a ceremonial marriage with the parent of such child, requires that the purported marriage be entered in good faith. The second issue concerns the application of the "deemed dependent" provisions of section 202(d)(4) of the Act, 42 U.S.C. § 402(d)(4).

Maria A. Eisenhauer, appellant, filed an application for social security survivors benefits on behalf of herself, as a widow, and her two minor children, Francis X. and Brian F. Eisenhauer, shortly after the death of her estranged husband Francis E. Eisenhauer. Francis E. Eisenhauer was a fully insured wage-earner under section 214(a) of the Social Security Act, 42 U.S.C. § 414(a), at the time of his death. Appellant's benefits application was approved and she began receiving the maximum statutory benefits.

Although the deceased supported Maria and their two children until his death on June 9, 1970, he and the appellant had been separated since 1965. No divorce was ever obtained. Sometime subsequent to the Eisenhauer separation in 1965, the deceased began living with Sonja Radauscher and on August 14, 1969 Sonja and the deceased obtained a marriage license and went through a ceremonial marriage in Elkton, Maryland. On the application for a marriage license the deceased falsely stated that he had never been previously married.

At the time Sonja and Francis E. Eisenhauer began living together Sonja had four children fathered by Andreas Radauscher, Sonja's husband from 1957 until their divorce in March, 1966. A fifth child, Francis E. Eisenhauer, Jr., was conceived prior to the dissolution of Sonja's marriage to Andreas but was born on July 27, 1966, during the period she and the deceased were living together. The paternity of Francis E., Jr., is disputed by the parties herein.[1] Sonja bore two more children while she and the deceased lived together and as to these children counsel for appellant stipulates that the deceased wage-earner was the biological father.

On September 23, 1970, Sonja Radauscher Eisenhauer filed an application for survivors benefits on behalf of Francis E., Jr., Sonja L. and Ursula Eisenhauer, the three children she bore while living with the wage-earner, and on April 28, 1972, she filed a claim for benefits on behalf of Monika, Andreas, Erich and Wilhelm Radauscher, the four children she bore while married to Andreas Radauscher. In May, 1972 child's insurance benefits were approved for Francis E., Jr., Sonja and Ursula, retroactive to June, 1970, and for Monika, Erich, Andreas and Wilhelm, retroactive to April, 1972. Because Maria and her two children had been receiving the maximum family benefit allowable under section 215(a), 42 U.S.C. § 415(a), the approval of benefits for Sonja's seven children necessitated a reduction in the benefit entitlement of appellant and her children. 42 U.S.C. § 403(a). After being notified by the Social Security Administration that her family's survivor benefits were to be reduced from almost $400.00 per month to slightly less than $120.00,[2] appellant requested a reconsideration. The Reconsideration Determination fully sustained the award of benefits to each of Sonja's seven children and the concomitant reduction of appellant's family benefits. Appellant, challenging the entitlement of each of Sonja's children, appealed this decision administratively and a hearing was held. The decision of the Ad-

---

1. The Secretary determined that Francis E., Jr., is entitled to benefits either as an illegitimate child or stepchild of the insured. Because we find this to be a correct application of the Act, a finding of fact as to his biological father is not necessary for decision of this appeal.

2. Since the appellant had accepted the full amount of benefits in good faith, the Secretary waived recoupment of amounts previously overpaid. See 42 U.S.C. § 404(b).

ministrative Law Judge affirmed the Reconsideration Determination and this became the final decision of the Secretary when it was approved by the Social Security Appeals Council.

Appellant brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary denying her claim that her family's survivor benefits had been improperly reduced. In the district court plaintiff contested only the award of benefits to the children of Sonja's marriage to Andreas Radauscher. The district court, finding the administrative decision to be a correct application of the Social Security Act and supported by substantial evidence, granted summary judgment for the Secretary. We affirm.

Sonja's children by her marriage to Andreas Radauscher were held to qualify for survivor benefits as stepchildren of the deceased wage-earner. They were not, of course, the legal stepchildren of Francis Eisenhauer because the purported marriage between their mother and the deceased was invalid. Section 216(e), 42 U.S.C. § 416(e), however, which defines "child" for purposes of eligibility under section 202(d)(1), 42 U.S.C. § 402(d)(1), provides, in part, that:

"a person who is not the stepchild of an individual shall be deemed the stepchild of such individual if . . . the mother or adopting mother, or the father or adopting father, as the case may be, of such person went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of subsection (h)(1)(B) of this section, would have been a valid marriage."

The last sentence of subsection 216(h)(1)(B) reads:

"For purposes of this subparagraph, a legal impediment to the validity of a purported marriage includes only an impediment (i) resulting from the lack of dissolution of a previous marriage or other-

wise arising out of such previous marriage or its dissolution, or (ii) resulting from a defect in the procedure followed in connection with such purported marriage."

Because Sonja and the deceased "went through a marriage ceremony resulting in a purported marriage" which would have been valid but for a legal impediment "resulting from the lack of dissolution of [deceased's] previous marriage," Sonja's children by her marriage to Andreas Radauscher are deemed to be the stepchildren of the deceased wage-earner.

■ Appellant argues that the "deemed the stepchild" provision of section 216(e) does not apply in the instant case because section 216(e) implicitly requires the ceremonial marriage be entered in good faith. Good faith, she contends, was absent when Sonja and the deceased purported to marry because both were fully aware that Eisenhauer's prior undissolved marriage precluded him from validly marrying Sonja.[3] We find this argument unpersuasive.

Essentially the argument advanced for imposing a requirement of good faith upon section 216(e) is that this qualification is necessary to avoid sham marriages from being used fraudulently to obtain Social Security benefits. The wisdom of utilizing such a requirement, however, lies within the judgment of the Congress, not this Court. When section 216(e) is contrasted with other provisions of the Act which expressly condition benefit entitlement upon a showing of good faith, Congress's decision not to impose this condition upon the benefits of children deemed to be stepchildren by virtue of a ceremonial marriage becomes apparent.

In 1960 Congress amended the Social Security Act to enlarge the class of persons entitled to receive disability and death benefits. The 1960 amendments introduced several ceremonial marriage provisions into the Act to enable those who, because of the

---

**3.** Although there is substantial evidence on the record to support a finding that Sonja and the insured entered their purported marriage with knowledge of its invalidity, the Secretary con-

tends that eligibility under section 216(e) does not require a finding of good faith and thus no finding was made.

legal invalidity of a marriage, were previously unable to show a status entitling them to qualify for benefits. Thus, the portion of section 216(e), quoted *supra*, was added to that section so that a child who would be the legal stepchild of the insured but for the invalidity of the parent's marriage to the insured, would be deemed a stepchild. Equivalent provision was made for illegitimate children:

"If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage." Section 216(h)(2)(B), 42 U.S.C. § 416(h)(2)(B).

Prior to the 1960 amendments the benefit eligibility of illegitimate children was limited by the status such children enjoyed under state intestate succession law. See section 216(h)(2)(A), 42 U.S.C. § 416(h)(2)(A).

Sections 216(e) and 216(h)(2)(B) serve to confer child's benefits by deeming persons to hold the status of a child *vis à vis* the insured without reference to the motives of the participants in the ceremonial marriage. In sharp contrast to these sections is the provision conferring spousal status as the result of an invalid ceremonial marriage, also enacted as part of the 1960 amendments. Under section 216(h)(1)(B) the applicant for spousal benefits whose claim is predicated upon an invalid ceremonial marriage must, among other things, establish to the satisfaction of the Secretary that the applicant went through the marriage in good faith and at the time of the ceremony did not know of the legal impediment which precluded the marriage from being legally valid. Furthermore, the spousal status conferred by the ceremonial marriage provisions of section 216(h)(1)(B) is unavailable to the applicant if another individual is or is

deemed to be the spouse of the insured under section 202(b), (c), (e), (f) or (g) and thus entitled to benefits.

Appellant seeks support for her argument that a good faith requirement is implicit in section 216(e) in two cases which make reference to the parallel provisions for illegitimate children in section 216(h)(1)(B) and (2)(B). Language in each of these cases, *Jimenez v. Weinberger*, 417 U.S. 628, 635, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363, 369 (1974) and *Moots v. Secretary, United States Department of Health, Education and Welfare*, 349 F.2d 518, 521 (4th Cir. 1965), *cert. denied*, 382 U.S. 996, 86 S.Ct. 582, 15 L.Ed.2d 483 (1966) assumes that illegitimates are denied the status of child under the ceremonial marriage provisions of section 216(h)(1)(B) and (2)(B) absent good faith on the part of the parents. In neither of these cases, however, was the issue before the Court. In *Jimenez* the Supreme Court found that the provisions of the Act which control the entitlement of afterborn illegitimates to benefits as a result of the parent's disability irrationally discriminated against some illegitimate children. The question whether good faith is an essential element of a claim under any of the ceremonial marriage provisions conferring the status of child was not at issue. The Court's passing reference in *dictum* to "formal, non-obvious defects in their parents' ceremonial marriage," 417 U.S. at 635, 94 S.Ct. at 2501, 41 L.Ed.2d at 369, can hardly be construed as a holding that the absence of good faith on the part of the parents disqualifies the child claimant. *Dictum* in *Moots* is no more compelling. Since the benefit applicant in *Moots* did not even establish that a ceremonial marriage took place, it cannot fairly be said that the issue of good faith was actually considered.

Appellant cites *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), for the proposition that preventing the use of sham marriages to obtain Social Security benefits is fundamental to the Act. In *Salfi* the Court upheld the nine-month duration-of-relationship requirements in

section 216(c)(5) and (e)(2), 42 U.S.C. § 416(c)(5) and (e)(2). The instant appeal, unlike that in *Salfi,* does not call into question the legislature's ability to fashion prophylactic rules to avoid spurious claims. Appellant does not ask to enforce a legislatively mandated requirement but asks that additional requirements be imposed. The Act draws a clear distinction between spouse and child benefit eligibility resulting from a ceremonial marriage. As to the former, Congress imposed a good faith requirement and denied eligibility to persons entering a purported marriage with knowledge of its invalidity; as to the latter such restrictive language is entirely absent.

■ As we have noted, the Social Security Act is to be accorded a liberal application in consonance with its remedial and humanitarian aims. *Adams v. Weinberger,* 521 F.2d 656, 659 (2d Cir. 1975); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 (2d Cir. 1972); *Haberman v. Finch,* 418 F.2d 664, 667 (2d Cir. 1969). Were we to adopt the restrictive construction of section 216(e) advocated by the appellant, children who are innocent of any lack of good faith on the part of the parent would be disentitled to benefits regardless of their dependency upon the insured.[4] Such a result runs counter to the principles which govern our interpretation of the Act and the language of the statute. The Secretary's interpretation that section 216(e) applies to confer the status of stepchild without reference to the motives attending the parents' ceremonial marriage is correct.

Appellant raises a second challenge to the award of benefits to Sonja's children by her first marriage. Mrs. Eisenhauer contends that even if the Secretary correctly deemed the Radauscher children to be stepchildren of the deceased wage-earner, they nonetheless fail to satisfy the dependency requirements of section 202(d)(1)(C), 42 U.S.C. § 402(d)(1)(C). Section 202(d)(1)(C) provides that every child (as defined in section 216(e)) of an individual who dies fully or currently insured shall be entitled to child's insurance benefits if, among other things, such child was dependent upon the insured at the time of the insured's death. Section 202(d)(4), however, creates a statutory presumption of dependency. That section provides:

"A child shall be deemed dependent upon his stepfather or stepmother at the time specified in paragraph (1)(C) of this subsection, if, at such time, the child was living with or was receiving at least one-half of his support from such stepfather or stepmother."

■ The "deemed dependent" provision is written in the disjunctive; a child, to be deemed dependent, must have been living with *or* receiving one-half of his support from the insured stepparent. By this disjunctive language, then, dependency is statutorily presumed if the child was living with the stepparent or was actually dependent upon the stepparent. Actual dependency, contrary to appellant's assertions, need not be shown if stepparent and child were living together at the time of the insured stepparent's death.[5]

4. We are not unsympathetic with the appellant's plight. This case presents a somewhat unusual situation of competing claims advanced by two distinct family units, each of which had been receiving support from the deceased wage-earner. More commonly the claimants on an insured's account compose one family unit and thus jointly share in the benefits awarded. A greater number of dependents always reduces the benefits each individual dependent receives once the maximum amount has been reached, but because these benefits are often pooled in a family unit nothing would be gained by challenging any one member's right to receive benefits. The appellant's family has suffered a severe reduction in benefits because of the entitlement of Sonja's children

by her previous marriage. The severity of the reduction is particularly unfortunate in this case because these children were receiving at least some of their support from Andreas Radauscher, their natural father. Nevertheless under the Act's definition of child and the absence of an actual dependency requirement, see discussion *infra,* we are compelled by the Act to affirm the entitlement of the children deemed to be stepchildren of the deceased to benefits on the deceased's account. Perhaps Congress should concern itself with this unfortunate result of the statutory provision.

5. The Act contains other provisions wherein the disjunctive criteria of section 202(d)(4) are

In challenging her family's benefits reduction, the appellant bears the burden of proof. *Cf. Kerner v. Flemming,* 283 F.2d 916, 921–22 (2d Cir. 1960). At the hearing held before the administrative law judge it was incumbent upon Mrs. Eisenhauer to introduce evidence supporting her claim that the Radauscher children were neither living with nor receiving more than one-half of their support from the deceased.

Initially the appellant conceded that the deceased was living with Sonja and the seven children. Later, however, she asserted that Mr. Eisenhauer and Sonja did not live together but instead would rendezvous from time to time. To support this allegation appellant relies on a statement made by the deceased on his application for a marriage license that he resided in New York. Sonja's home, in which the deceased held no property interest, is in New Jersey. Appellant also relies on a default judgment she obtained in the New York Supreme Court declaring the deceased to have been a resident of Queens, New York at the time of his death. With that judgment appellant secured an amendment of the deceased's death certificate to reflect the Queens address.[6] The death certificate originally showed the deceased's residence to be Sonja's New Jersey home. Rebutting this evidence is the 1969 tax-return filed by the deceased which represents his residence during the last year of his life as Sonja's New Jersey home. Also, upon Sonja's application for benefits on behalf of her three youngest children an investigation was conducted by the Bureau of Retirement and Survivor's Benefits which determined that "all facts in the file establish that the wage earner was living with or supporting and fathering the children."

The residence of the deceased at the time of his death is a question of fact. This Court must sustain the factual findings of the Secretary if supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). In the instant case there is substantial evidence to support the finding and reasonable inferences therefrom that the deceased was living with Sonja and the children at the time of his death.

Appellant argues that 20 C.F.R. § 404.-1113, promulgated by the Secretary pursuant to rule-making authority conferred by section 205(a) of the Act, 42 U.S.C. § 405(a), requires a finding that the deceased exercised, or had the right to exercise, parental control over the children whose benefits she disputes. The regulation defines the term "living with" for purposes of the deemed dependent provision of section 202(d)(4) as including this control element.[7] There was no specific finding by the Secretary as to control because the appellant, who bore the burden of refuting the children's eligibility, introduced no evidence indicating such control was absent. The eligibility of Sonja's children is presumptively valid and remains so until evidence is introduced rebutting their *prima facie* entitlement. With the competing claims against the deceased's account so postured, the Secretary was not required to make a specific finding that Sonja's children by her prior marriage were subject to the control of the deceased.

Because we find there is substantial evidence on the record as a whole that the children deemed to be the stepchildren of the insured wage-earner were living with

used in the conjunctive. *See, e. g.,* section 202(d)(8) and (9), 42 U.S.C. § 402(d)(8) and (9).

**6.** On her application for family benefits filed on June 29, 1970 the appellant stated that her estranged husband lived in New Jersey at the time of his death.

**7.** 20 C.F.R. § 404.1113(a) provides:
" 'Living with' as used in sections 202(d)(3), 202(d)(4), 202(d)(8), 202(d)(9), and 216(h)(3) of the Act as amended and 'living in such individual's household' as used in section 216(e) of the Act mean the parent and child are sharing the same residence and that the parent is exercising or has the right to exercise parental control and authority over the child. As used in this section, the term 'parent' includes a natural parent, legally adopting parent, stepparent, the foster parent as to whom the child-claimant has the status of 'child' under a theory of 'equitable adoption,' and the grandparent or stepgrandparent."

the insured at the time of his death, no purpose would be served by passing upon their actual dependency upon the deceased.

Affirmed.