Ruth McMAHON, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., as Secretary of the United States Department of Health, Education and Welfare, Defendant-Appellee.

No. 133, Docket 78–6086.

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1978.

Decided Jan. 24, 1979.

John E. Kirklin, New York City (Kalman Finkel, New York City, on the brief), for plaintiff-appellant.

J. Christopher Jensen, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., and Herbert G. Johnson, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for defendant-appellee.

Before MOORE, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from an order entered in the Eastern District of New York, Jack B. Weinstein, District Judge, on remand from the Supreme Court for further considera-

tion in light of its decision in *Califano v. Jobst*, 434 U.S. 47 (1977), the question presented is whether the Secretary of HEW has construed properly § 202(d)(6) of the Social Security Act, 42 U.S.C. § 402(d)(6) (1976) (the Act), so as to bar appellant permanently from re-entitlement to child's disability insurance benefits simply because her spouse, now deceased, was not entitled to receive social security benefits, and, if so construed, whether the statute is constitutional. For the reasons set forth below, we hold that the district court properly adopted the Secretary's construction of the statute, and that the statute as construed is constitutional. We affirm.

## I.

Appellant is a 55 year old woman who has been severely and continuously disabled since before age 18.[1] In October 1961, after a disability determination by the Secretary of HEW, she was awarded child's disability insurance benefits[2] based on the account of her father who was a fully insured wage earner. The benefits subsequently were converted to surviving child's insurance benefits upon the death of her father in 1962.

On May 18, 1962, appellant married Peter McMahon. Although McMahon had been rated 100% disabled by the Veterans Administration based on injuries and illnesses incurred during his military service in World War II, he had been denied social security disability benefits because he never had been able to accumulate a sufficient number of quarters of work coverage to meet the special earnings requirements of the Act. As a consequence of her marriage to an individual not entitled to receive social security benefits, appellant's child's disability insurance benefits were terminated by the Secretary pursuant to §§ 202(d)(1)(D)[3] and (d)(5) of the Act.[4]

---

1. Plaintiff suffers from severe and permanent disabilities arising from serious birth defects. Her disabilities include a congenital cleft palate, a severe speech defect, congenital cataracts and glaucoma that have left her partially blind, a Laurence-Moon-Biedl syndrome marked by obesity and mental retardation, and a subnormal I.Q.

2. 42 U.S.C. § 402(d)(1) (1976) defines the eligibility requirements for child's insurance benefits as follows:

   "(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits or of an individual who dies a fully or currently insured individual, if such child—
   (A) has filed application for child's insurance benefits,
   (B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22, and
   (C) was dependent upon such individual—
   (i) if such individual is living, at the time such application was filed,
   (ii) if such individual has died, at the time of such death, or
   (iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has

died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,
   shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs—
   (D) the month in which such child dies or marries, . . ."

3. *Id.*

4. 42 U.S.C. § 402(d)(5) (1976) provides:

   "(5) In the case of a child who has attained the age of eighteen and who marries—
   (A) an individual entitled to benefits under subsection (a), (b), (e), (f), (g), or (h) of this section or under section 423(a) of this title, or
   (B) another individual who has attained the age of eighteen and is entitled to benefits under this subsection,
   such child's entitlement to benefits under this subsection shall, notwithstanding the provisions of paragraph (1) of this subsection but subject to subsection (s) of this section, not be terminated by reason of such marriage; except that, in the case of such a marriage to a male individual entitled to benefits under section 423(a) of this title or this subsection, the preceding provisions of this paragraph shall not apply with respect to benefits for

Thus, the only income received by the McMahons during their marriage consisted of Peter McMahon's veteran's benefits, supplemented by small amounts occasionally earned by appellant in a sheltered workshop.

After the death of Peter McMahon in 1969, appellant applied to have her surviving child's insurance benefits reinstated and to be granted wage earner's disability benefits based on her own wage earning record. The application for benefits based on her account was denied in January 1970 on the ground that she had not worked the requisite number of quarters. The application to be reinstated to benefits derived from her father's account also was denied in February 1970 on the ground that her disability was not severe enough to qualify for surviving child's insurance benefits.

In December 1971, appellant reapplied for reinstatement to benefits based on her father's account. This second application was heard by an administrative law judge who ruled in favor of appellant and awarded her reinstatement to her father's benefits. This award, however, was reversed by the Social Security Administration Appeals Council on its own motion, holding that the language of § 202(d)(6) [5] barred re-entitlement even in situations where the disqualifying marriage has been terminated.

On April 5, 1974, appellant commenced the present action in the district court for judicial review to have §§ 202(d)(1)(D), (d)(5) and (d)(6) declared unconstitutional and to obtain an award of child's insurance benefits retroactive to the date of her marriage to Peter McMahon. Relying on the district court decision in *Jobst v. Richardson*, 368 F.Supp. 909 (W.D. Mo.), *vacated and remanded*, 419 U.S. 811 (1974), *aff'd on remand*, No. 20495–1 (W.D. Mo., July 27, 1976), *rev'd sub nom. Califano v. Jobst*, 434 U.S. 47 (1977), the district court below on January 18, 1977 awarded appellant the requested relief, but stayed the judgment pending a direct appeal by the Secretary to the United States Supreme Court pursuant to 28 U.S.C. §§ 1252 and 2101 (1976). Also included in the district court's ruling was a statement that, should the Supreme Court remand for further consideration in light of *Jobst*, the district court would dismiss appellant's complaint.

While the appeal in the instant case was pending, the Supreme Court in *Califano v. Jobst, supra*, reversed the judgment entered on the district court decision and sustained the constitutionality of the statutory provisions in so far as they provide for the termination of benefits upon marriage to an individual not entitled to receive social security benefits. 434 U.S. 47 (1977). The Supreme Court subsequently reversed and remanded the instant case for further consideration in light of *Califano v. Jobst*. On remand, the district court entered a judgment on March 15, 1978 dismissing appellant's complaint in accordance with the district court's earlier statement anticipating a remand in light of *Jobst*.[6] From that judgment, the instant appeal has been taken.

months after the last month for which such individual is entitled to such benefits under section 423(a) of this title or this subsection unless (i) he ceases to be so entitled by reason of his death, or (ii) in the case of an individual who was entitled to benefits under section 423(a) of this title, he is entitled, for the month following such last month, to benefits under subsection (a) of this section."

5. See text at page 52, *infra*.

6. In her original action in the district court, appellant in the instant case raised claims similar to those raised in *Jobst*—namely, that she was entitled to benefits extending to the date of her marriage, since her benefits should not have been terminated at all. When the Supreme Court's decision in *Jobst*, however, foreclosed any possibility of succeeding on this claim, see note 7 *infra*, appellant, on remand to the district court, abandoned her request for benefits retroactive to her marriage in 1962; instead, she moved for summary judgment declaring that she was entitled to reinstatement of benefits commencing on the death of her husband—a claim not raised in *Jobst*. The district court, in its original ruling on January 18, 1977, stated that, if the Supreme Court subsequently remanded the case for further consideration in light of its decision in *Jobst*, the district court would dismiss appellant's complaint since it saw no substantial difference between appellant's case and the *Jobst* case. Thus, despite the fact that appellant abandoned

## II.

■ Turning to the legal issues presented in light of these facts, we first must determine whether the district court properly affirmed the Secretary's decision construing the statutory language of § 202(d)(6) to bar appellant from re-entitlement to child's disability insurance benefits. We hold that the Secretary's construction of § 202(d)(6) was a reasonable interpretation and that the district court was correct in affirming the Secretary's determination to deny appellant re-entitlement.

Under § 202(d)(1)(B), which establishes the general eligibility requirements for child's insurance benefits, the applicant must be "unmarried" at "the time such application was filed". 42 U.S.C. § 402(d)(1)(B) (1976). Once a person satisfies this eligibility requirement and begins to receive benefits, the statute provides for the termination of these benefits "in the month in which such child dies or marries". 42 U.S.C. § 402(d)(1)(D).[7] Even though a person's benefits are terminated, however, he may become re-entitled to benefits if he satisfies the requirements of § 202(d)(6), 42 U.S.C. § 402(d)(6) (1976), which provides in pertinent part:

> "(6) A child whose entitlement to child's insurance benefits on the basis of the wages and self-employment income of an insured individual terminated with the month preceding the month in which such child attained the age of 18, or with a subsequent month, may again become entitled to such benefits ( *provided no event specified in paragraph (1)(D) has occurred* ). . . ." (emphasis added).

The parenthetical proviso in § 202(d)(6) referring to paragraph (1)(D) is the nexus of appellant's present challenge on appeal. The two events specified in paragraph (1)(D) are the death or marriage of the child. Thus, when § 202(d)(6) is read in conjunction with the termination section— paragraph (1)(D)—the statute clearly provides that a child may become re-entitled to benefits *only* if he has not married or died.

Appellant, however, would have us construe § 202(d)(6) in consonance with § 202(d)(1)(D) so as to require only that a person in her situation who reapplies for benefits after the death of the ineligible spouse be unmarried at the time of reapplication. She suggests that Congress sought to terminate benefits to a disabled child *only while* that child is married to a non-social security beneficiary, thus permitting re-entitlement once the intervening marriage to the ineligible spouse has been terminated. She urges this Court to look behind what she refers to as the "plain meaning" of the statutory language and to construe § 202(d)(6) so that it comports with the benevolent purpose of the Act as expressed in the legislative history.

A well settled principle of statutory construction is that a court, in an appropriate case, should resort to an examination of legislative history to ascertain legislative purpose when dealing with ambiguous statutory language or language that seems at odds with the Congressional purpose. *See, e. g., Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 10 (1976); *Cass v. United States*, 417 U.S. 72, 78–79 (1974); *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966); *NLRB v. Fruit & Vegetable Packers Local 760*, 377 U.S. 58, 62 (1964); *Cox v. Roth*, 348 U.S. 207, 209 (1955); *United States v. N. E. Rosenblum Truck Lines, Inc.*, 315 U.S. 50, 55 (1942). Here, however, the statutory language not only is sufficiently clear to determine the Congressional purpose, but the plain meaning of the statute also comports with the general purpose of the statute. To interpret § 202(d)(6) in the manner suggested by appellant would render the parenthetical proviso not only superfluous but also meaningless in light of

---

those claims specifically ruled on by the Supreme Court in *Jobst*, the district court dismissed her complaint in its entirety.

**7.** An exception to this rule of termination was added by the 1958 amendment to the Act, 42 U.S.C. § 402(d)(5), which provides that benefits

are not terminated by the beneficiary's marriage to an individual who himself is entitled to social security benefits. *See* note 4, *supra*. The constitutionality of these provisions was upheld in *Califano y. Jobst, supra*.

the other provision which specifies the termination events. Unless the proviso is mere surplusage in so far as it relates back to paragraph (1)(D), we see no other reason why Congress would include this proviso in § 202(d)(6) except that it meant to specify that a person will not qualify under the re-entitlement section once he has married or died.

Moreover, there is nothing in the legislative history to suggest that construing the statute in accordance with its plain meaning would be contrary to the Congressional purpose. We of course have recognized that the "Social Security Act is to be accorded a liberal application in consonance with its remedial and humanitarian aims." *Eisenhauer v. Mathews*, 535 F.2d 681, 686 (2 Cir. 1976). *Accord, Rosenberg v. Richardson*, 538 F.2d 487, 490 (2 Cir. 1976); *Adams v. Weinberger*, 521 F.2d 656, 659 (2 Cir. 1975); *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2 Cir. 1972); *Haberman v. Finch*, 418 F.2d 664, 667 (2 Cir. 1969). With respect to the question here involved, however, there is nothing in the legislative history to indicate that Congress, contrary to the explicit language of § 202(d)(6), intended to allow re-entitlement in cases where an intervening marriage has occurred. Indeed, the only reasonable interpretation of this statute is that any marriage occurring subsequent to a child's initial entitlement to benefits terminates those benefits and prevents re-entitlement in the future.

The challenged provision is merely part of a general statutory scheme designed to provide the wage earner and the dependent members of his family with protection in the form of benefits financed by taxes levied on the wage earners who are the primary beneficiaries of the fund. *See Califano v. Jobst, supra*, 434 U.S. at 50–52. Although there is no specific mention of the proviso in the re-entitlement section, Congress reasonably could have concluded that after marriage a child no longer would be dependent upon his parents, but instead would turn to his spouse for support. Should the spouse die, it also is reasonable to assume that the surviving spouse would rely on savings or benefits derived from the deceased spouse and not revert to depending on his parents for support. Even though this basic assumption may not be valid in all cases, Congress clearly has the *power* to legislate on the basis of reasonable general assumptions. *Id.* at 53.

■ In accordance with this clear statutory language, the Secretary of HEW has proposed regulations implementing §§ 202(d)(1) and (d)(6), which would expressly provide that an intervening marriage to a non-eligible spouse would permanently bar re-entitlement to child's insurance benefits, *e. g.*:

> "A marriage which terminated by death of the spouse or divorce is not a bar to initial entitlement to child's benefits, but would constitute a bar to re-entitlement." 42 Fed. Reg. 17,484 (1977).

It also is a well established principle of statutory construction that "[t]he interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute." *Youakim v. Miller*, 425 U.S. 231, 235–36 (1976). *Accord, Johnson v. Robison*, 415 U.S. 361, 367–68 (1974); *Udall v. Tallman*, 380 U.S. 1, 16 (1965); *Friedman v. Berger*, 547 F.2d 724, 731–32 (2 Cir. 1976), *cert. denied*, 430 U.S. 984 (1977). As long as the agency's interpretation is reasonable and there are no " ' "compelling indications that it is wrong," ' " the agency's construction should be given great deference. *Beal v. Doe*, 432 U.S. 438, 447 (1977); *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421 (1973); *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 121 (1973); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381 (1969).

We find no compelling reasons to indicate that the Secretary's construction is contrary to the purpose or the intent of the statute. We therefore hold that the district court properly affirmed the Secretary's determination to deny appellant re-entitlement to benefits.

### III.

■ Having determined that the Secretary's construction of the re-entitlement provision of the statute not only is reasonable, but also is in accordance with the Congressional purpose, we now turn to the question whether the statute, as construed, is constitutional. We hold that it is.

■ To comport with the due process and equal protection principles of the Fifth Amendment, the classifying criteria used by the Secretary to distinguish between those individuals who are eligible for child's insurance benefits and those who are not must bear some rational relationship to the Congressional purpose behind the statute. *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 533 (1973); *Jefferson v. Hackney*, 406 U.S. 535, 546 (1972); *Dandridge v. Williams*, 397 U.S. 471, 485 (1970). In *Mathews v. DeCastro*, 429 U.S. 181, 185 (1976), however, the Supreme Court stated:

> "In enacting legislation of this kind a government does not deny equal protection 'merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' " (citation omitted).

Under the challenged section, the criterion separating those eligible individuals from ineligible individuals is marriage. Marriage serves as a terminating event for secondary beneficiaries throughout the Act. *See, e. g.*, 42 U.S.C. § 402(e)(1)(A) (1976) (widow's benefits); 42 U.S.C. § 402(f)(1)(A) (1976) (widower's benefits); 42 U.S.C. § 402(g)(1)(A) (1976) (mother's benefits); 42 U.S.C. § 402(h)(1)(C) (1976) (parent's benefits); 42 U.S.C. § 402(b)(1)(C) (1976) (divorced wife collecting benefits on her ex-husband's account). Congress rationally assumed that once an individual marries, he leaves his original family, starts his own family, and, consequently, no longer is dependent upon his parents for support. Instead, he looks to his spouse for support; when that spouse dies or when the marriage is terminated by divorce or separation, the dependent spouse logically looks for support *not* to his parents, but to his former spouse—by way of inheritance, support decrees or other financial arrangements. Thus, by having marriage serve as a terminating point for benefits received through one's parents, Congress chose a classifying criterion that not only is rational but is based on common experience.

As appellant points out, there will be situations where this rationale does not apply. An individualized determination of need perhaps might better indicate those persons who should be eligible for child's insurance benefits.[8] Although the Supreme

---

8. Appellant points to three categories of individuals who are similarly situated, but who are treated differently depending upon whether they are applying for initial entitlement or for re-entitlement. First, those individuals who marry non-social security beneficiaries and who later apply for the first time for child's insurance benefits after the death of their spouses, unlike appellant, are qualified to receive benefits under § 202(d)(1)(B). Second, if an individual who has been receiving benefits based on the account of one parent has those benefits terminated because of marriage, he may apply, after the death of the spouse, under § 202(d)(1)(B) for benefits based on the account of the other parent. Third, individuals whose benefits are terminated because of their marriage to a non-eligible spouse may become reinstated to those benefits if their marriage is terminated by the voiding or annulment of the marriage when no grant of permanent alimony

is made and the annulling court does not retain jurisdiction.

At first blush these categories may appear indistinguishable for purposes of determining need. Closer examination, however, of the factors distinguishing the categories indicates a rational basis for awarding benefits to these groups and not to appellant. When a marriage has been terminated by voiding or annulment without an award of support, it is rational to assume that the former beneficiary will turn to his parents for support. On the other hand, when the spouse dies or support is awarded during a divorce, the dependent spouse generally will look to any inheritance or support awards rather than to his parents.

In distinguishing between those individuals who apply initially for benefits under § 202(d)(1)(B) and those who apply for reinstatement for benefits under the re-entitlement provision, § 202(d)(6), the timing of the marriage and the application is the distinguishing

Court in *Califano v. Jobst* was not confronted with the constitutionality of the re-entitlement provision, the reasoning employed by the Court in upholding the constitutionality of the termination provision and its exception is applicable here. The Court in *Jobst* was faced with a claim similar to that raised here—namely, whether it was constitutional to deny benefits to two disabled individuals who married each other simply because one of the individuals was not eligible for social security benefits. The plaintiff in *Jobst* argued that the statute discriminated irrationally between two groups who were both equally in need, basing his claim on the fact that child's insurance beneficiaries who marry other disabled social security beneficiaries, under the statute, would continue to receive benefits while he and his wife would have their benefits terminated simply because she was not eligible.

In ruling on the constitutionality of the termination provision, the Court noted that Congress may prescribe general rules based on certain factual assumptions rather than require a case by case determination of dependency: "General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Califano v. Jobst, supra,* 434 U.S. at 53. Although the general rule may not refer to irrational criteria such as religion or race, marriage is not an irrational ground of classification:

"[M]arriage is an event which normally marks an important change in economic status. . . . [T]here can be no question about the validity of the assumption that a married person is less likely to be

dependent on his parents for support than one who is unmarried." *Id.*

In holding that the exception to the general termination provision also is constitutional, the Court reasoned that the exception to the general termination rule permitting the continuation of benefits when two social security beneficiaries marry, like the general termination provision itself, is easy to apply and provides a generally reliable indicator of dependency:

"Since the test is one that may be applied without introducing any new concepts into the administration of the trust fund, Congress could reasonably take one firm step toward the goal of eliminating the hardship caused by the general marriage rule without accomplishing its entire objective in the same piece of legislation." (footnote omitted). *Id.* at 57.

With respect to the statute involved in the instant case, the ease of administering a general rule also may well have led to the choice of marriage as the factor distinguishing between persons eligible for re-entitlement to benefits and those individuals who would be less likely to need such benefits. Although some individuals who have married and lost benefits may be in as great a need after the death of their spouses as those beneficiaries who never have married, an overwhelming number of the former group can expect to receive some support from their spouses. In the absence of a general rule, each applicant for re-entitlement would have to demonstrate dependency. Although there are some individuals who may reap the benefits of the different rules applicable to those persons who apply initially under the entitlement section and those who reapply for benefits under the re-entitlement section, extending benefits

factor. The timing of the marriage is not an irrational criterion for distinguishing between groups and provides an easy standard for distinguishing between persons most likely to be in need of benefits. Most children who apply initially for benefits will be in need of support if they are not married. Requiring that they be "unmarried", therefore, at the time of the initial application is a reasonable requirement in light of this assumption. If a child who once has received benefits marries, however, Con-

gress rationally assumed that he no longer would require parental support. Thus, marriage serves as a bar to re-entitlement. The group that benefits from this assumption are those individuals who have two wage-earning parents and can apply initially after their marriage even though they once received benefits based on the other parent's record. This alone does not render the statute unconstitutional. *Califano v. Jobst, supra,* 434 U.S. at 57–58.

to those individuals has no adverse impact on appellant.[9] As the Court stated in a footnote to *Jobst:*

> "Even if we were to sustain his attack, and even though we recognize the unusual hardship that the general rule has inflicted upon him, it would not necessarily follow that Mr. Jobst is entitled to benefits. . . . For the vice in the statute . . . could be cured either by invalidating the entire exception or by enlarging it. . . . If we were to enlarge the exception, it would be necessary to fashion some new test of need, dependency, or disability." (citations omitted). 434 U.S. at 56 n. 14.

This observation applies with equal force to the present case. Were we to invalidate the re-entitlement provision in order to extend to appellant those benefits received by children who never have married or who do not apply initially for benefits until after the death of their spouses, we would be required to establish judicially some other standard to determine the dependency of individuals applying for re-entitlement under the statute. We think that is the responsibility of Congress, not the courts.

Mindful of the impact of a remand from the Supreme Court in light of an intervening decision of that Court, *see, e. g., Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25–26 (1978), (Stevens, J., dissenting), we hold that the criterion in this case—marriage—is neither irrational nor contrary to the purpose of the Act. Although some inequities may occur, such individual cases surely do not require that the entire statutory provision be declared unconstitutional.

Affirmed.