In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3243

JASON SENNE,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF PALATINE, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-5434—**Matthew F. Kennelly**, *Judge*.

ARGUED FEBRUARY 9, 2011—DECIDED JULY 11, 2011

Before EASTERBROOK, *Chief Judge*, and FLAUM and
RIPPLE, *Circuit Judges*.

FLAUM, *Circuit Judge*. Jason Senne violated a Village
of Palatine municipal ordinance when he left his ve-
hicle in a parking space overnight. He returned to his
vehicle to find a $20 parking citation on its windshield.
Displeased that the citation revealed personal informa-
tion—such as his driver's license number, address, and
weight—Senne initiated a multi-million-dollar class

action lawsuit. He maintained, then as now, that the Village's conduct violated the Driver's Privacy Protection Act ("DPPA" or "Act"), 18 U.S.C. § 2721, *et seq.*, which generally makes it unlawful to disclose personal information contained in a motor vehicle record. The DPPA includes a private cause of action against persons— a term defined to include entities such as the Village, 18 U.S.C. § 2725(2)—who impermissibly use someone's personal information. 18 U.S.C. § 2724(a). The distinction between permissible uses and impermissible ones is key, for Senne's effort to recover damages is stymied by a provision of the DPPA that excepts the Village's conduct from the Act's proscriptions. The district court was correct to dismiss this case, and we affirm the judgment in favor of the Village.

## I. Background

We accept as true all well-pleaded allegations in the complaint. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). In August 2010, Senne violated the Village's overnight parking ban and was issued parking citation number P2794846. The fine was $20. The citation was printed electronically and placed underneath one of the windshield-wipers on his vehicle. Senne discovered it approximately five hours after it was placed on the vehicle. The citation included personal information about Senne—his name, address, driver's license number, date of birth, sex, height, and weight. The information came from motor vehicle records maintained by the Illinois Secretary of State. The directions on the

citation stated that the recipient could pay the fine in person or request a hearing. The citation also doubled as an envelope, and the directions said to use it if paying by mail. The complaint does not say if Senne followed those directions, but because personal information appeared on the outside of the citation-turned-envelope, anyone who came across it could have viewed his personal information. Thus, under the Village's practice, personal information gets disclosed once when the ticket is placed on the vehicle, and then a second time if the recipient pays by mail. That is Senne's position, in any event.

The DPPA provides a cause of action against persons and certain entities who disclose "personal information . . . from a motor vehicle record, for a purpose not permitted under" the DPPA. 18 U.S.C. § 2724(a). After Senne received his citation, he filed suit on behalf of himself and other similarly situated individuals. His complaint alleges that the Village, through its officers, violates the DPPA by placing personal information on traffic citations.

The Village filed a motion to dismiss the case, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Village argued that placing a traffic ticket on a windshield does not "disclose" personal information within the contemplation of the DPPA. The Village also argued that, even if it did disclose Senne's personal information, placing a traffic ticket on a vehicle is a "permissible use" under 18 U.S.C. § 2721(b). The district court granted the Village's motion to dismiss on both

grounds, providing a short statement of reasons in open court. As explained below, we agree with the second ground, but not the first.

## II. Discussion

A district court's ruling on a motion to dismiss is subject to de novo review, as is its interpretation of a federal statute. *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 871 (7th Cir. 2009). Recent cases sketching the contours of Federal Rule of Civil Procedure 12(b)(6) have centered on whether allegations in a complaint state a "plausible" claim for relief. *E.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (teaching that the plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-04 (7th Cir. 2010) (teasing out the implications of *Iqbal*). This case rests more comfortably in Rule 12(b)(6)'s wheelhouse: the Village contends that if one accepts all of Senne's allegations as true, there simply is no legal basis for holding it liable. 5B Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1355, at 351-52 (3d ed. 2004) (explaining the historic function of the rule and its common-law antecedent); *see also* Fed. R. Civ. P. 12(b)(6) advisory committee note (1946 amend.) (stating that Rule 12(b)(6) is "substantially the same as the old demurrer for failure of a pleading to state a cause of action"). In particular, the Village contends that placing a parking ticket on a windshield does not disclose

personal information within the meaning of the DPPA. As a backstop, the Village argues that placing a ticket on a windshield is a permissible use of personal information under the Act.

The viability of the Village's arguments turns on the meaning of the DPPA. Our goal is to ascertain Congress's purpose in enacting the legislation. *E.g.*, *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1264 (2011) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)); *United States v. N.E. Rosenblum Truck Lines*, 315 U.S. 50, 53 (1942). Generally, the plain language of a statute is the best evidence of legislative intent. *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) ("The strong presumption that the plain language of the statutes expresses congressional intent is rebutted only in rare and exceptional circumstances.") (quotation marks and alterations omitted); *United States v. Ye*, 588 F.3d 411, 414-15 (7th Cir. 2009). In looking to the language of the DPPA, we are mindful that statutory interpretation is a "holistic endeavor," which requires courts to look at words and their meaning not in isolation, but in the context of the statutory scheme in which they appear. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004).

## A.  Disclosing Personal Information under the DPPA

Title 18, Section 2721(a)(1), of the United States Code, provides that a "State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available" personal

information "obtained by the department in connection with a motor vehicle record." There is no dispute that the information was personal information or that it was obtained "in connection with a motor vehicle record." The parties focus on whether or not placing a citation with readily accessible personal information "discloses" personal information with the meaning of Section 2721.

The Village argues that disclose means to disclose *to someone*. In the Village's view, a plaintiff must show that personal information was actually handed over to a specific someone, or at least that a specific someone observed the information. The Village's argument, however, puts shackles on the ordinary meaning of the word disclose. The infinitive form of the word means "[t]o open up to the knowledge of others; to make openly known, reveal, declare." 4 THE OXFORD ENGLISH DICTIONARY 737-38 (2d ed. 1989) (def. 5); *see also, e.g.,* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 360 (1990) (defs. 2a, 2c) ("to make known or public" and "to expose to view"); THE RANDOM HOUSE COLLEGE DICTIONARY 378 (Rev. ed. 1980) (defs. 1-3). One may disclose information by handing it over to someone or by exposing it to view. Either will do. The Village does not grapple with the breadth of the word. Nor does it otherwise offer a convincing defense of its position that Congress adopted half of the word's meaning. Respect for the DPPA's text demands that we not blithely accept that view. Imagine if a DMV employee placed a stack of driver records on a city sidewalk. Under the Village's reading, only the person whose information was at the top of the stack would have his information disclosed

and only after someone viewed it. The second record would not be disclosed, and a cause of action would not accrue, until a passerby picked up the first record, removed it, and peered down.

Our conclusion that Congress would not have intended that outcome is bolstered by the rest of Section 2721(a). The Village's argument about the word disclose casts a squinted eye toward the section in which the word appears. Section 2721(a) makes it illegal to "disclose *or otherwise make available*" personal information. The Village's brief does not address the emphasized language, and the language is not helpful to its cause. The word available means capable of being employed with advantage. 1 OXFORD ENGLISH DICTIONARY 812 (2d ed. 1989) (def. 3). When a citation with personal information has been placed on an automobile, readily viewable and free for the taking, it cannot be gainsaid that the recipient's personal information has been made available. Accordingly, the Village's argument that "knowing" disclosure under Section 2721(a) requires knowledge that the information would be discovered by a "hypothetical thief" is a non-starter. As our oft-approved criminal pattern jury instructions provide, knowingly "means that the defendant realized what he was doing and was aware of the nature of his conduct." *Pattern Criminal Federal Jury Instructions of the Seventh Circuit* § 4.06. If the act that constitutes disclosure was done voluntarily and purposely, the *mens rea* element of the DPPA is satisfied. *See also United States v. Ramsey*, 785 F.2d 184, 188-89 (7th Cir. 1986); *Model Penal Code* § 2.02(2)(b)(i).

Finally, we note that both parties have argued, at a high level of abstraction, that the legislative history supports their favored interpretation of Section 2721(a). Legislative history can be useful in resolving statutory ambiguity, although resorting to it is not without perils. As Judge Leventhal's quip goes, using legislative history can be akin to looking out over a crowd and spotting one's friends. Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 IOWA L. REV. 195, 214 (1983). We need not decide whose friends we like better, however, because the meaning of the words in § 2721 is plain. *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987). A plaintiff seeking to sue under the DPPA is not required to show (much less plead) that a third-party actually received personal information from a motor vehicle record. The Village's practice of placing personal information on an uncovered traffic citation "disclose[s] or otherwise make[s] available" the information.

**B.  Permissible Uses of Personal Information under the DPPA**

Senne's success on the meaning of the Section 2721(a), however, is short-lived. Title 18, Section 2721(b), of the United States Code, lists "permissible uses" of personal information that do not violate the DPPA. In all, Congress included14 permissible uses. They run the gamut, from certain research activities to operating toll facilities. The Village says that three permissible uses apply, but they make arguments with respect to only two of them, and we need discuss only one.

Section 2721(b)(4) provides, with emphasis supplied by us: "Personal information referred to in subsection (a) . . . may be disclosed . . . [f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any . . . court or agency or before any self-regulatory body, *including the service of process* . . . ." Under Illinois law and by municipal ordinance, the parking citation that Senne received constitutes service of legal process. *See* 625 ILCS 5/11-208.3(b)(3) (authorizing municipalities to serve process for parking violations by means of affixing the notice to the vehicle); Village of Palatine Ordinance 2-707(b)(3) (service of complaint in administrative proceedings may be effected by affixing complaint to the property where the violation is found). Because affixing the parking citation to Senne's vehicle constituted service of process, disclosing personal information in the citation did not violate the DPPA.

Neither of Senne's responses provides an answer. Senne first seems to argue that there is a distinction between disclosing information and using information and that the distinction matters. If so, then the argument is ambitious, because even a permissible use could constitute an unlawful disclosure. That argument is no silver bullet. The DPPA provides that personal information "may be disclosed . . . [f]or use . . .," and then lists permissible uses. 18 U.S.C. § 2721(b). The subsection (like other parts of the DPPA) is marked by inartful drafting, to be sure, but that does not make it ambiguous. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). The only plausible reading of the subsection is that permissible uses may disclose otherwise-

protected information. The implication of Senne's argument is that much if not all of Section 2721(b) is surplusage. He offers no convincing explanation for why this is a defensible, much less superior, construction of the statute. *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (canon against surplusage "is sometimes offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute") (quotation marks omitted).

Second, Senne argues that subsection (b)(4) should not apply because printing personal information on a citation "does nothing to aid service." This an example of a common thread that runs through Senne's brief; he argues variously that the Village's practice is unnecessary, foolish, and a "poor security practice." That may be, but Congress is free to use language broad enough to permit all those things. Subsection (b)(4) does not impose best practices on municipalities when enforcing traffic regulations. If municipalities disclose personal information "in connection with any . . . administrative . . . proceeding . . . including the service of process," then they fall outside the Act's proscriptions. The statute does not ask whether the service of process reveals no more information than necessary to effect service, and so neither do we.[1] Because subsection (b)(4)

---

[1] Judge Ripple's partial dissent reasons that our interpretation of the statute frustrates Congressional intent. We respectfully disagree with the position that the "manifest intent of the statute" is to limit disclosures of personal information "to those

(continued...)

by its terms permitted the Village to put Senne's personal information on the traffic ticket that it placed on his windshield, this lawsuit cannot move forward.

The language in subsection (b)(4) is also broad enough to cover Senne's redisclosure argument. Recall, Senne intimates that the Village rediscloses personal information when a ticket recipient mails in a parking citation. The design of the citation, and instructions for using it as an envelope, means that anyone who comes across it once it has been placed in the mail can observe a ticket recipient's personal information. (Hold to one side the fact that the Village also allows in-person payment.) The provision on which Senne relies is 18 U.S.C. § 2721(c). The provision says that an "authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b) . . . ." Senne's argument suffers from two problems. First, the

---

[1] (...continued)

that are reasonable in effectuating the purpose of" subsection (b). By its terms, subsection (b)(4) permits the disclosure of *all* personal information, not just that which is reasonably necessary. The dissenting opinion does not provide a textual foundation for its interpretation of the statute, which Congress of course remains at liberty to amend. While individual legislators might well favor placing greater restrictions on what state motor vehicle departments can disclose, it is not evident that Congress as a whole would wish to do so. It is not uncommon for Congress, out of respect for our federal system, to limit its response to legitimate policy challenges— even those with apparent (and appealing) solutions.

same language that allows the Village to serve process would also cover Senne's response. Second, and more importantly, subsection (c) raises the specter of liability for the person who rediscloses personal information, not the original person or entity who effected the disclosure. In this case, the person who would be on the hook for the redisclosure is Senne—and we cannot entertain a lawsuit between him and himself. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937) (To be justiciable, a controversy must "touch[] the legal relations of parties having adverse legal interests.").

### III.  Conclusion

For the reasons set forth above, the judgment of the district court is AFFIRMED.

RIPPLE, *Circuit Judge*, concurring in part and dissenting in part.  I agree with the majority opinion that the Village of Palatine ("Village") disclosed, within the meaning of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, Mr. Senne's personal information. I respectfully disagree, however, that the Village's actions constitute a statutory exemption under the DPPA. In my

view, the Village has violated the DPPA through excessive disclosure of personal information on parking tickets. In enacting the DPPA, Congress was acutely aware of the need to balance between the privacy/ security interests of an individual and the government's legitimate use of private information.[1] The majority opinion does not, in my view, reflect the Congressional judgment in this respect. Therefore, with great respect for the thoughtful analysis of my colleagues, I must respectfully dissent.

The Village submits that placing parking tickets containing extensive personal information from the files of the Department of Motor Vehicles on illegally parked vehicles falls within two permissible uses under the DPPA. In § 2721(b), the DPPA provides that "[p]ersonal information . . . may be disclosed . . . [f]or use by any . . . law enforcement agency, in carrying out its functions," 18 U.S.C. § 2721(b)(1), and "[f]or use in connection with any . . . administrative . . . proceeding in any Federal, State, or local court . . . including the service of process," 18 U.S.C. § 2721(b)(4). The majority opinion focuses

---

[1] *See* 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of Rep. Moran, sponsor of the DPPA) ("[The DPPA] strikes a critical balance between an individual's fundamental right to privacy and safety and the legitimate governmental and business needs for this information."); *id.* at H2526 (statement of Rep. Goss, co-sponsor of the DPPA) ("I believe the [DPPA] adequately balances the circumstances where access to the DMV information is justified relative to the very real concern for privacy protection.").

solely on the permissible use of personal information to serve process. I believe, however, that neither permissible use is applicable.

The majority opinion is correct that the issuance of a parking ticket is within the function of a law enforcement agency and that such an issuance begins an administrative proceeding under Illinois law. *See* 625 ILCS 5/11-208.3(b)(1), (b)(3). For the majority opinion, the DPPA simply does not address or regulate *excessive* disclosure. In its view, so long as the purpose behind the action is a permissible use listed in § 2721(b), there is apparently no limit to the disclosure that the government can undertake. Therefore, in issuing a parking ticket, the Village can publish the vehicle owner's home address, driver's license number, date of birth, sex and height as well as the vehicle identification number even though such information is of no consequence for the purpose of issuing the ticket: to notify the owner of the car of incurred financial liability.

The majority opinion's interpretation frustrates, significantly, the intent of Congress. The language and structure of the statute makes clear that Congress did not intend that the statutory exceptions be divorced, logically or practically, from the purpose of the statute. Rather, the exceptions must be interpreted in a manner that is compatible with Congress's careful attempt to balance individual privacy/security needs and the legitimate operational and administrative needs of the government. We should not ascribe to Congress the intent to sanction the publication of *any and all* personal infor-

mation through the invocation of an exception. Rather, we should follow the manifest intent of the statute that such disclosures be limited to those that are reasonable in effectuating the purpose of that exception. The exception should not be read as permitting the release of material totally irrelevant to the governmental purpose that the exception was intended to protect. We should interpret the statute as permitting the release, through the exceptions, of only the personal information reasonably necessary to effectuate the governmental purpose set forth in the exception.[2]

Congress did not contemplate that the permissible uses would justify any disclosure, but only those that are reasonable in light of the permitted use. To attribute any other intent from the text or the structure of the

_____

[2] In discussing the permissible uses listed under § 2721(b), Senator Harkin, co-sponsor of the DPPA, considered the very issue of excessive disclosure, commenting that:

> In appropriate circumstances law enforcement agencies may *reasonably* determine that disclosure of this private information to a citizen or group of citizens will assist in carrying out the function of the agency. In my view, section [2721(b)] authorizes such disclosures. . . .

> However, this exception is *not a gaping loophole* in the law. A false representation that this information will be used for law enforcement purposes would be punishable . . . .

139 Cong. Rec. S15962 (daily ed. Nov. 17, 1993) (emphasis added).

statute is to infer that Congress deliberately intended to frustrate the very purpose of the statute. Rather, in my view, in order to preserve the integrity of the Congressional work product, the information disclosed under an exception must have a reasonable relationship to the purpose of the exception.

Mr. Senne's parking ticket contains disclosures of personal, security-sensitive information that simply bear no reasonable relationship to the purpose of the parking ticket: to notify the owner of a car that he is financially liable for an administrative violation. There is no need to include, for the public to view, the owner's home address, driver's license number, date of birth, sex and height or the vehicle identification number. Indeed, we have commented that even names are unnecessary for parking tickets, as "[a] license [plate] number uniquely identifies the person." *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1174 (7th Cir. 1991). In fact, having a license plate number may be more effective than having a name. *Id.* ("Parking tickets effectively say: 'Chicago, Plaintiff, versus Owner of the vehicle with License No. xxxx, Defendant.' That identifies the parties to the suit even better than a name does. Only one person matches a given license plate, while there are many 'John Smiths'. A name is just a way of identifying a person; the name and the person are not a joint 'thing'.").

It is important to note, therefore, the stark difference between the balance struck by Congress in enacting the exceptions to the general mandate of the statute and the balance upon which the majority focuses in this

opinion. Congress debated and struck in its legislative work product a balance between the personal privacy/security concerns of individuals and the operational needs of the Nation's police forces. The majority opinion, on the other hand, strikes a balance between an individual's personal privacy/security interests and the administrative convenience of a particular police force. It largely ignores, therefore, the very problem that Congress sought to address.

The consequences of the majority's opinion are not theoretical but real. The majority opinion facilitates the very wrongdoing that Congress intended to thwart. Under the majority's opinion, an individual seeking to stalk or rape can go down a street where overnight parking is banned and collect the home address and personal information of women whose vehicles have been tagged and their personal information left for him to see. He can ascertain the name, exact address including the apartment number and even other information such as sex, age, height and weight pertinent to his nefarious intent. The police, in derogation of the explicit intent of Congress, effectively has done his work for him in identifying potential victims. Similarly, a public official, having gone to great lengths to protect himself and his family from the risk of violence that unfortunately every public official must accept, must now bear the risk that an expired parking meter violation might provide a golden opportunity for an individual intent on causing the official or his family bodily harm or death.

Notably, these scenarios mirror exactly the events, referenced in the legislative history of the DPPA, that motivated its introduction and passage:

> In California, actress Rebecca Schaeffer was brutally murdered in the doorway of her Los Angeles apartment by a man who had obtained her [unlisted] home address from [California's] DMV.
>
> . . . .
>
> [A] 31-year-old man copied down the license plate numbers of five women in their early twenties, obtained their home address from the DMV and then sent them threatening letters at home.

139 Cong. Rec. S15762 (daily ed. Nov. 16, 1993) (statement of Sen. Boxer, sponsor of the DPPA); *see also Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 3296 (2010). Representative Goss, co-sponsor of the DPPA, summed up "the intent of the bill" as "simple and straightforward: We want to stop stalkers from obtaining the *names and address* of their prey before another tragedy occurs." 140 Cong. Rec. H2527 (daily ed. Apr. 20, 1994) (emphasis added); *see id.* (statement of Rep. Morella) ("Allowing a government agency to aid stalkers in locating those they are harassing is untenable."). Representative Moran, sponsor of the DPPA, also commented, "Think about that. A total stranger can obtain personal information about you without knowing anything more about you than your license plate number and you are helpless to stop it." *Id.* at H2522.

Here, of course, the Village's police department expedites the malefactor's task. He need not go to the

trouble of going to the Department of Motor Vehicles to get all the information he wants; the police readily have supplied it. Congress in enacting the DPPA was motivated specifically by how disclosure of personal information in driving records, in particular home addresses, could enable criminal activity. With this decision, the court frustrates the very intent and purpose of Congress.

Finally, it should be noted that today's decision does not *require* that police departments print all the personal information on a parking ticket that the Village elected to print on the ticket here. Indeed, it appears from the representations of counsel that at least some sophisticated police departments have taken a more restrained approach and have recognized the immense public safety risk involved in the practice that the court sanctions here as a matter of federal law. Police departments that are more sensitive to public safety have every right to mandate more sensible solutions, and the better departments will. The risk here is that less sophisticated police departments, more prone to bureaucratic convenience than public safety concerns, will take shelter in today's decision, and, consequently, their communities will incur horrendous crimes of violence that would not otherwise have occurred.

Accordingly, with great respect for the contrary view expressed in the majority opinion, I concur in part and dissent in part from the judgment of the court.