FLAUM, Circuit Judge,
with whom EASTERBROOK, Chief Judge, and POSNER and SYKES, Circuit Judges, join, dissenting.
Although I agree with the majority’s conclusion that the posting of personal information on a parking citation constitutes a disclosure within the meaning of the Driver’s Privacy Protection Act (“DPPA”), 18 U.S.C. § 2721, et seq., I am unable to agree with the majority’s conclusion that permissible disclosures are limited to such information as is necessary to effectuate the purposes of the statutory exceptions. Neither the text nor the legislative history conveys Congress’s intent to limit the information that may be disclosed in connection with a particular exception.
The present dispute turns on the meaning of the DPPA, or, more specifically, on the meaning of the exceptions that permit the disclosure of personal information. Our goal is to ascertain Congress’s purpose in enacting the legislation. See, e.g., Milner v. Dep’t of Navy, — U.S. —, 131 S.Ct. 1259, 1264, 179 L.Ed.2d 268 (2011) (citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)); United States v. N.E. Rosenblum Truck Lines, Inc., 315 U.S. 50, 53, 62 S.Ct. 445, 86 L.Ed. 671 (1942). Generally, the plain language of a statute is the best evidence of legislative intent. United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 11, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008) (“The strong presumption that the plain language of the statute expresses congressional intent is rebutted only in rare and exceptional circumstances.” (quotation marks and alterations omitted)); United States v. Ye, 588 F.3d 411, 414-15 (7th Cir.2009). In looking to the language of the DPPA, we are mindful that statutory interpretation is a “holistic endeavor,” which requires courts to look at words and their meaning not in isolation but in the context of the statutory scheme in which they appear. Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60,125 S.Ct. 460, 160 L.Ed.2d 389 (2004) (quoting United Sav. Ass’n of Tex. v. Timbers of Inwood *613 Forest Assocs., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)).
Title 18, Section 2721(b), of the United States Code, lists fourteen “permissible uses” of personal information that do not violate the DPPA. Relevant to the practice challenged in this case, Section 2721(b) provides: “Personal information referred to in subsection (a) ... may be disclosed ... (4) [f|or use in connection with any civil, criminal, administrative, or arbitral proceeding in any ... court or agency or before any self-regulatory body, including the service of process.... ” Under Illinois law and by municipal ordinance, the parking citation that Senne received constitutes service of legal process. See 625 ILCS 5/11 — 208.3(b)(3) (authorizing municipalities to serve process for parking violations by means of affixing the notice to the vehicle); Village of Palatine Ordinance 2 — 707(b)(3) (service of complaint in administrative proceedings may be effected by affixing complaint to the property where the violation is found). Indeed, the majority recognizes that the parking citation constitutes service of process. See Op. at 608-09 & n. 18.[1] In my view, because a municipality falls outside the DPPA’s proscriptions when it discloses personal information as part of serving legal process, the Village’s disclosure of information in the parking citation does not violate the DPPA. The DPPA does not ask whether the service of process reveals no more information than necessary to effect service, and so neither should we.
In determining that subsection 2721(b)(4) permits the disclosure of all personal information, not just that which is reasonably necessary, I adhere to the basic canon of statutory interpretation of giving meaning to every word. See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). The words “for use,” which introduce each subsection of Section 2721(b)’s list of exceptions, indicate that personal information can be disclosed when it is used for one of the enumerated purposes. This interpretation does not read “for use” out of the DPPA, nor does it limit the phrase’s function to linking grammatically the “may be disclosed” language in the introductory paragraph of Section 2721(b) to the purposes and recipients listed in the subsections. The express terms of the statute permit the disclosure of information when one of Section 2721(b)’s exceptions applies. All of the information to which Senne objects was used in the parking citation, and its disclosure was therefore proper under subsection 2721(b)(4).
The majority interprets “for use” as expressing a limiting principle for what information may be disclosed under a particular exception. By restricting the scope of the exceptions, the majority essentially inserts a qualifier, such as “appropriate” or “reasonable” or “necessary,” into the phrase “for use.” Subsection 2721(a)(1) of the DPPA prohibits states from disclosing personal information “except as provided in subsection (b) of this section,” but the DPPA does not contain any language that limits disclosure to information that complies with the purposes of Section 2721(b) or that is actually used to carry out an enumerated purpose. Some of the exceptions listed in Section 2721(b) limit how the *614 information can be used, but subsection 2721(b)(4)’s exception for service of process does not contain any words of limitation.[2] Thus, the DPPA’s text makes clear that Congress intended to leave states with considerable leeway. Congress could have included a qualifier for disclosures, but it did not do so. Congress of course remains at liberty to amend the statute, and, for the policy reasons advanced by the majority, it may well see the need to do so. However, the current text does not support the majority’s view.
The majority’s interpretation of “for use” is informed by its understanding of Congress’s intent in enacting the DPPA. The majority asserts that “the statute’s purpose of safeguarding information for security and safety reasons, contained in the general prohibition against disclosure” would be “frustrated” if “for use” were construed to allow any information to be disclosed as part of an exception. Op. at 606. But the legislative history does not convey an intent to eliminate any and all dangers that can be traced back to the disclosure of information from motor vehicle records.
The legislative history reveals that Congress enacted the DPPA as a crime-fighting measure in response to specific concerns. The murder of actress Rebecca Schaeffer by a stalker who acquired her address from a motor vehicle department is widely recognized as the catalyst for the DPPA. See Taylor v. Acxiom Corp., 612 F.3d 325, 336 (5th Cir.2010). Similarly, Senator Barbara Boxer, one of the DPPA’s sponsors, emphasized that “[i]n 34 States, someone can walk into a State Motor Vehicle Department with your license plate number and a few dollars and walk out with your name and home address.” 139 Cong. Rec. S15,762 (daily ed. Nov. 16, 1993); see also 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of Rep. Moran, a sponsor of the DPPA) (“A total stranger can obtain personal information about you without knowing anything more about you than your license plate number and you are helpless to stop it.”). The legislative history also contains statements about the need to protect domestic violence victims and law enforcement officers from retaliatory attacks. See Op. at 607 & nn. 14-15. Rather than evincing the intent to guard against all imaginable dangers, the legislative history emphasizes Congress’s intent to prevent the specific danger that arises when individuals are able to obtain personal information upon request from state motor vehicle records. See, e.g., 139 Cong. Rec. S15,765 (daily ed. Nov. 16, 1993) (statement of Sen. Biden) (“This amendment closes a loophole in the law that permits stalkers to obtain — on demand — private, personal information about their potential victims.... Thus, potential criminals are able to obtain private, personal information about their victims simply by making a request.”).
The majority is concerned that interpreting “for use” to allow the disclosure of information that is not strictly necessary for the exception creates safety risks, such as a stalker stumbling upon a parking citation containing information about his or her target, or a miscreant selecting a target based on the information provided in a citation. While recognizing the possibility of such chance crimes, I conclude that these crimes were not the types of crimes that motivated Congress to enact the *615 DPPA. Though individual legislators might well favor placing greater restrictions on what state motor vehicle departments can disclose, it is not evident that Congress as a whole would wish to do so. It is not uncommon for Congress, out of respect for our federal system, to limit its response to legitimate policy challenges — even those with apparent (and perhaps appealing) solutions.
Congress may have decided not to qualify “for use” so as to limit the exercise of judicial discretion. Under my interpretation of “for use,” the role of the judiciary is confined to determining how the public agency was using the information. If the agency was using the information in connection with one of Section 2721(b)’s permissible uses, then the agency’s disclosure of information is valid; otherwise, the agency’s disclosure violates the DPPA. This categorical approach may end up over-or under-inclusive at times, but it has the virtue of being straightforward, predictable, and less costly to administer. By contrast, under the majority’s interpretation of “for use,” the judiciary is tasked with determining what pieces of information are needed in order to carry out the purpose of the applicable exception. The statute offers no guidance to the judges, lawyers, and public actors who will inevitably struggle to distinguish between necessary and extraneous information. By calling on judges to ban seemingly unnecessary disclosures, the majority makes the statute less straightforward, less predictable, and more costly to administer (due to the litigation expenses associated with determining the propriety or necessity of each disclosure). The majority’s interpretation of “for use” thereby exposes municipalities to substantial penalties (possibly $80 million for Palatine) for failing to predict what disclosures a judge will find to be appropriate. It is not our responsibility to evaluate the two approaches and determine which constitutes better policy; rather, our responsibility is to determine which approach Congress incorporated into the DPPA. See Pac. Operators Offshore, LLP v. Valladolid, — U.S. —, 132 S.Ct. 680, 690, 181 L.Ed.2d 675 (2012) (“[I]f Congress’ coverage decisions are mistaken as a matter of policy, it is for Congress to change them. We should not legislate for them.” (quoting Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 427, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985))). Far from frustrating Congress’s intent, my interpretation defers to the intent expressed by Congress when it included the phrase “for use” without any qualifier or any limiting guidelines.
Because the text contains no qualifier, the majority struggles to articulate the substance of the qualifier that it reads into the phrase “for use.” In certain parts of its opinion, the majority describes the standard for evaluating disclosures in broad, conclusory terms that express policy objectives but shed little light on how to distinguish proper from improper disclosures. See, e.g., Op. at 606 (“The words ‘[f]or use’ ... contain the necessary limiting principle that preserves the force of the general prohibition while permitting the disclosures compatible with that prohibition.”); Op. at 608 (“Congress did not intend that the statutory exceptions be divorced, logically or practically, from the purpose of the statute.”). In other parts of its opinion, the majority states that any disclosure “must be compatible with the purpose of the exception,” Op. at 606, must “effect[ ] a particular purpose exempted by the Act,” Op. at 606, and “must comply with those legitimate uses of information identified in the statutory exceptions,” Op. at 609. This language appears slightly more concrete, but it still falls short of providing actual guidance. Reasonable minds will disagree as to what disclosures *616 are compatible with the purpose of the exception, while arguably extraneous disclosures might still be viewed as compatible. The majority defines “for use” as permitting “an authorized recipient” to “disclose the information only in a manner that does not exceed the scope of the authorized statutory exception,” Op. at 606 (emphasis in original), but the majority does not provide any definitions, tests, or tools for determining the scope.
By construing “for use” to contain a limiting principle without articulating its substance, the majority effectively calls on judges to determine whether a particular disclosure is “appropriate” or “reasonable” or “necessary” for carrying out the exception. The majority states that it does not read “use” as signifying “necessary use,” see Op. at 606-07 n. 12, but it provides no alternative definition. The majority also asserts that it does not read a “best practices” requirement into the statute, see id., but it does not explain what distinguishes “legitimate” or “compatible” uses, which are apparently mandated by the statute, from best practices, which are not. The dissent to the initial panel opinion had interpreted the DPPA as limiting disclosures to “the personal information reasonably necessary to effectuate the governmental purpose set forth in the exception.” Senne v. Village of Palatine, III, 645 F.3d 919, 926 (7th Cir.2011) (Ripple, J., dissenting); see also id. (“[T]he information disclosed under an exception must have a reasonable relationship to the purpose of the exception.”). Though the en banc opinion does not adopt the “reasonably necessary” standard, it supplies no clear standard in its place.
Finally, certain parts of the majority’s opinion define “for use” as requiring that “the disclosed information actually must he used for the purpose stated in the exception.” Op. at 609 (emphasis added); see also Op. at 606 (“[T]hat language means that the actual information disclosed — i.e., the disclosure as it existed in fact — must be information that is used for the identified purpose.” (emphasis in original)); Op. at 608 (“[T]he complaint does put in issue whether all of the disclosed information actually was used in effectuating either of these purposes.” (emphasis in original)). This approach does help judges by allowing them to evaluate ex post whether the information was actually used to carry out the purpose of the exception. This approach does not, however, help municipalities to determine ex ante whether a particular disclosure violates the DPPA. The determination of what information will actually be used to carry out an exception cannot always be made in advance.[3] Further, as Judge Posner discusses, there are hypothetical uses for all of the information disclosed by Palatine. Municipalities might seek to disclose more information than strictly necessary to account for the risk that the core information is erroneous or outdated.
The text of the DPPA simply does not contain the “actual use” limitation that the majority reads into it. Cf. Howard v. Criminal Info. Servs., 654 F.3d 887, 892 (9th Cir.2011) (“There is ... no problem with Defendants obtaining the personal information for potential future use, even if they may never use it. The DPPA does not contain a temporal requirement for when the information obtained must be used for the permitted purpose. Nor is there a requirement that once the information is obtained for a permitted purpose that it actually be used at all. The DPPA *617 only requires that Defendants obtained the information for a permitted purpose”). In conflict with Congress’s intent to preserve the ability of law enforcement and municipalities to carry out their functions, the majority’s interpretation opens municipalities up to substantial liability for incorrectly predicting exactly what information will be used in the course of carrying out an exception.
Contrary to the view of my colleagues in the majority, I do not construe Section 2721(b) as permitting only the disclosure of information that is necessary to carry out the purpose of an exception. Congress has the authority to amend the DPPA to restrict disclosures to those that are “for a necessary use” or “for an appropriate use,” but the existing text and legislative history do not evince Congress’s intent to do so. Therefore, while I concur with the majority’s conclusion that the Village’s action constitutes a disclosure, I respectfully dissent from its conclusion that the disclosure violates the DPPA. In my judgment, because Senne’s information was used in the parking citation and the citation constitutes service of process, the Village’s disclosure does not violate the DPPA.

. The en banc majority also determines that the exception found in subsection 2721(b)(1) applies because the issuance of the citation is one of the functions of the Village's police department. See Op. at 608-09. The initial panel majority found it unnecessary to reach this issue after concluding that the personal information was properly disclosed under the (b)(4) exception. See Senne v. Village of Palatine, Ill, 645 F.3d 919, 923-24 (7th Cir.2011) (majority opinion). There is similarly no need to address the (b)(1) exception here since the disputed phrase "for use” applies in the same way to both exceptions.

. Similarly, Congress limited permissible disclosures by requiring express consent for the disclosure of "highly restricted personal information.” See 18 U.S.C. § 2721(a)(2). Notably, although Congress applied this restriction to ten of Section 2721(b)'s exceptions, Congress did not apply this heightened restriction to subsection 2721(b)(4).

. Although the majority insists that permissible disclosures are not limited to those that are "necessary” to effectuate the exception, see Op. at 606-07 n. 12, a "necessary” standard may be the only way to determine in *617 advance what information will ultimately be used.